Melvin **FREEMAN**, Appellant,
(Defendant below)

v.

**STATE** of Indiana, Appellee.
(Plaintiff below)

No. 49S00–8703–CR–325.

Supreme Court of Indiana.

July 31, 1989.

George K. Shields, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Judge.

Defendant–Appellant Melvin Freeman was convicted, after a jury trial, of Dealing in Cocaine, a Class A felony, and Conspiracy to Commit Dealing in Cocaine, also a Class A felony. He received fifty (50) year sentences on each count ordered served consecutively. His sentence was enhanced an additional thirty (30) years on an habit- ual offender determination, for a total sentence of one hundred thirty (130) years. On his direct appeal Freeman raises the following issues:

1. trial court error in its determination his absence from the jurisdiction was a knowing, intentional, and voluntary waiver of his right to be present at trial and sentencing;

2. insufficient evidence to sustain his convictions;

3. trial court error in allowing a confidential informant to testify regarding investigation of another drug dealer;

4. trial court error in denying his motion to suppress evidence seized from his and co-defendant's automobiles;

5. trial court error in admitting a witness' videotaped deposition; and

6. trial court error in admitting tape recorded conversations between him and the informant.

The facts most favorable to the verdict show that Freeman met government informant Russell Singleton in August, 1983. In the fall of that year, Freeman contacted Singleton several times to arrange for the purchase of a large quantity of marijuana in exchange for cocaine. Singleton informed Special Agent Fred Moore of the Federal Drug Enforcement Administration.

Singleton and Freeman met in Indianapolis in January, 1984 and finalized plans for the deal. Freeman offered Singleton two (2) kilograms of cocaine, worth approximately one hundred thousand dollars ($100,000), in exchange for one thousand (1000) pounds of marijuana. There was some discussion of making this a monthly transaction. Singleton also told Freeman a third man, from the west coast, would bring the money to Indianapolis and test the cocaine prior to purchasing it. This third man actually was Special Agent Fred Moore. Freeman agreed to make a down payment on the drugs and pay the rest at a later date.

Later, Singleton telephoned Freeman to confirm the deal; the conversation was recorded. Singleton arrived in Indianapolis the following day and met Freeman at the Quality Inn Motel. This meeting and an

earlier telephone conversation were also tape recorded. At this meeting Freeman assured Singleton the cocaine was of high quality. Later in the afternoon, Freeman unexpectedly came to Singleton's motel room and asked that the marijuana be delivered to southern Indiana rather than Chicago as previously agreed.

That same evening Singleton met Freeman and co-defendant Timothy Hopper in the bar at the Quality Inn. Hopper changed the delivery plans somewhat, but assured Singleton the cocaine was of high quality. At this meeting, Special Agent Moore joined the men and stated he had the money needed to purchase the cocaine.

Still later Freeman and Moore left the bar and went to Singleton's room; Freeman counted the money there. Freeman then told Moore he didn't want to deliver the cocaine to the Quality Inn and asked Moore to come to the Rodeway Inn where he could inspect the cocaine. The conversation was tape recorded.

Freeman, Moore, and Hopper then left the motel. Hopper retrieved his possessions from Room 131 of the Rodeway Inn and gave Freeman the key. Moore was left alone in the room and Freeman and Hopper left the hotel. Freeman went to the Days Inn and returned with one (1) kilogram of cocaine. Moore telephoned Special Agent Casey and told him to bring the money to buy the cocaine. Moore weighed the cocaine after Casey arrived and Casey gave Freeman fifty thousand dollars ($50,000). Casey asked that a second kilogram of cocaine be delivered, but Freeman refused. Casey then arrested and searched Freeman. Hopper was also arrested at the Days Inn.

A forensic chemist analyzed the seized cocaine. The one kilogram of the drug was found to be 92% pure and a smaller amount seized was found to be 94% pure.

·I

Freeman was tried and sentenced *in absentia*. He now alleges trial court error in its determination that his absence from trial was a knowing, voluntary, and intelligent waiver of his right to be present. He claims it was improper for the court to sentence him *in absentia*.

█ Under the Sixth Amendment of the United States Constitution and Art. 1, Sec. 13 of the Indiana Constitution, a criminal defendant has a right to be present during his trial. *Fennell v. State* (1986), Ind., 492 N.E.2d 297, 299. When a defendant fails to appear for trial and fails to notify the trial court or provide it with an explanation of his absence, the trial court may· conclude the defendant's absence is knowing and voluntary and proceed with trial when there is evidence that the defendant knew of his scheduled trial date. *Carter v. State* (1986), Ind., 501 N.E.2d 439, 440–41; *Martin v. State* (1984), Ind., 457 N.E.2d 1085, 1086. The record discloses that Freeman was aware of the trial date. He neither notified the trial court nor provided it with an explanation for his absence. At a hearing preceding trial, the trial judge noted that he had personally advised Freeman the trial was to commence on June 24, 1985. Freeman's attorney, Stephen Dillon, stated Freeman was aware of the trial date and was also aware no continuance would be granted. He testified his last contact with Freeman was on June 17, 1985, and he was unable to find him or contact him after that date. There was evidence from the bail bondsman that Freeman had been in contact with her office at regular intervals but that they had not heard from him and were not able to contact him after June 17. Co-defendant Hopper's attorney stated that Freeman was present at the pretrial when the June 24th date was set, there was even a discussion regarding whether the trial would start at 9:30 a.m. or 1:00 p.m. He stated Freeman was present and heard the discussions. As a matter of fact, the hearing preceding trial did not start until 1:00 p.m., and Freeman was not present at that time nor did he appear at any time during the trial. The evidence supported the trial court's decision to proceed to trial in Freeman's absence.

█ Freeman also contends the trial court erred when it sentenced him *in ab-*

*sentia.* This question is moot. Freeman appeared in court on August 20, 1986, for resentencing. During this hearing Freeman requested a continuance for the purpose of psychiatric examination. The trial court granted the continuance. On November 5, 1986, a new sentencing hearing was held and Freeman was resentenced for his convictions. He presents no prejudice amounting to error on this issue.

## II

The second issue presented for our review is sufficiency of the evidence to sustain Freeman's convictions. Where sufficiency is challenged on appeal, this Court will neither reweigh evidence nor judge the credibility of witnesses. We look only to the evidence most favorable to the State together with all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the verdict, it will not be disturbed. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670, 672.

■ Freeman asserts the evidence is insufficient to sustain his conviction for conspiracy to commit a felony pursuant to IC 35-41-5-2. He claims the State failed to prove he was part of a criminal agreement to commit a felony. This Court held in *Survance v. State* (1984), Ind., 465 N.E.2d 1076, 1080:

> A conspiracy entails an intelligent and deliberate agreement between the parties. *Woods v. State,* (1980) [274] Ind. [624], 413 N.E.2d 572, 576. It is not necessary, however, to present direct evidence of a formal express agreement. *Williams v. State,* (1980) [274] Ind. [94], 409 N.E.2d 571, 573; *Woods,* 413 N.E.2d at 576. The agreement as well as the requisite guilty knowledge and intent may be inferred from circumstantial evidence alone, including overt acts of the parties in pursuance of the criminal act. *Beal v. State,* (1983) Ind., 453 N.E.2d 190, 194; *Williams,* 409 N.E.2d at 573; *Woods,* 413 N.E.2d at 576; *Patterson v. State,* (1979) 270 Ind. 469, 478, 386 N.E.2d 936, 942; *Johnson v. State,* (1975) 164 Ind.App. 263, 265, 328 N.E.2d 456, 458.

*See also Perkins v. State* (1985), Ind., 483 N.E.2d 1379. There was more than adequate evidence before the jury from which they could find or infer an agreement beyond a reasonable doubt. The facts outlined above indicate Freeman actually initiated the drug deal with Singleton. The plan consisted of delivering two (2) kilograms of cocaine for one hundred thousand dollars ($100,000) and future monthly deliveries of like amounts. Freeman and Hopper worked together, with Singleton, Moore, and others, during the preliminary arrangements to bring about the final transaction. Hopper altered the terms of Freeman's initial proposal by changing delivery from Chicago to a point in Indiana. Freeman and Hopper transported Moore to the Rodeway Inn where Moore waited for the cocaine to be delivered. Freeman arrived at the Days Inn Motel and, shortly thereafter, returned to the Rodeway Inn with one (1) kilogram of cocaine in his possession. Hopper remained at the Days Inn and was later arrested there. These facts clearly indicate Hopper waited at one motel with the cocaine while Freeman met Moore, Singleton, and Casey at another motel to finalize the trade. There was sufficient evidence from which the jury could find beyond a reasonable doubt that Freeman conspired and agreed to deal in cocaine.

■ Additionally, Freeman contends there is insufficient evidence to sustain his conviction for dealing in cocaine. He claims the State presented no evidence of his intent to deliver. Intent may be inferred from the circumstances presented in the case. *Woodson v. State* (1986), Ind., 501 N.E.2d 409, 411; *Jeffers v. State* (1985), Ind., 485 N.E.2d 81, 85–86. Here, Freeman initiated the drug deal and after it had been finalized, delivered one (1) kilogram of cocaine to Moore for a price of fifty thousand dollars ($50,000). The cocaine had been weighed and packaged for sale and delivery. There was sufficient evidence to support Freeman's convictions.

## III

■ Freeman claims the trial court erred by allowing the State's confidential infor-

mant, Russell Singleton, to testify regarding his investigation of another drug dealer. Singleton's testimony followed that of State's witness, Lawrence Lillig. During cross-examination, defense counsel questioned Lillig at length as to how Informant Singleton became acquainted with Freeman. Lillig testified that Singleton met Freeman during an investigation of another drug dealer, Steve Jones. Thereafter, on direct examination, State's witness Singleton testified that he met Freeman while investigating Jones. Freeman objected to Singleton's testimony on the basis of relevancy. Freeman's claim of reversible error has no merit. The subject had been opened by defense in its lengthy cross-examination of Lillig. Singleton's testimony was no more than cumulative of Lillig's testimony on the same subject. Furthermore, the testimony did not refer in any manner to Freeman's commission of these crimes, but showed how the investigation of Freeman was initiated. The trial court has broad discretion in ruling on the relevance of evidence. *Denton v. State* (1986), Ind., 496 N.E.2d 576, 583. We see no abuse of that discretion in this instance.

### IV

■ Freeman next challenges the court's denial of his motion to suppress evidence seized from his and co-defendant's vehicles. On the evening of his arrest, Freeman's vehicle was impounded to the garage under the Federal Building in Indianapolis. During a warrantless inventory search of the vehicle a package of cocaine was discovered under the dashboard. Defense counsel objected on the grounds of illegal search and seizure. However, where, as here, the vehicle was lawfully impounded, officers were justified in conducting an inventory search, and a warrant was not required. *Dixon v. State* (1982), Ind., 437 N.E.2d 1318, 1323.

■ Freeman also objected to the trial court's admitting photographs of co-defendant Hopper's vehicle. However, as this Court held in *Johnson v. State* (1985), Ind., 472 N.E.2d 892, 898, in cases involving Fourth Amendment search and seizure claims, the initial question which must be answered is whether the person aggrieved had any personal and legitimate expectation of privacy in the place searched. *Id.*, citing *Humes v. State* (1981), Ind., 426 N.E.2d 379. A defendant has no constitutional right to challenge the search or seizure of another person's property. *Johnson*, 472 N.E.2d at 898, citing *Hope v. State* (1982), Ind., 438 N.E.2d 273. Therefore, Freeman lacks standing to challenge the evidence because he had no proprietary interest in Hopper's car.

### V

Freeman next assigns as error the trial court's admitting the videotaped deposition of a State's witness. The witness, Timothy Wilcox, is a private investigator, and both the State and defense counsel deposed him. During the deposition, Wilcox stated he would be unavailable to testify at trial due to chemotherapy treatment and the fact he was needed in Chicago for an arbitration hearing. Freeman contends the State failed to prove Wilcox was unavailable and that his statements were trustworthy.

In order to determine whether previously recorded testimony may be used in court in lieu of live testimony, the trial court uses a two-step approach:

> The first part of the test requires the prosecution to "either produce or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant." [*United States ex rel. Haywood v. Wolff*] 658 F.2d [455] at 460 [ [(7th Cir.1981) ] (quoting *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980)). The court must then determine that the statement to be used bears sufficient "indicia of reliability," usually by establishing the defendant had an opportunity to cross-examine the witness.

*Iseton v. State* (1984), Ind.App., 472 N.E.2d 643, 648–49.

Rule 32 of the Indiana Rules of Trial Procedure is entitled "Use of Depositions in Court Proceedings," and provides, in pertinent part, as follows:

The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

. . . .

(b) that the witness is outside the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or

(c) that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; . . . .

The decision whether to invoke the rule allowing admission of prior recorded testimony is within the sound discretion of the trial court. *Johnston v. State* (1988), Ind., 517 N.E.2d 397, 399. A finding of unavailability can be implicit in the trial court's admission of the deposition, and the burden is on the appellant to prove the error in judgment was clearly against logic and the natural inferences to be drawn from the record. *Iseton*, 472 N.E.2d at 649.

 Here the State did establish unavailability; it was necessary for Wilcox to be out of State during the trial, and he suffers from cancer and the effects of chemotherapy treatment. Defense counsel participated in the deposition with full opportunity to object and cross-examine the witness. The trial court did not err in admitting the deposition.

## VI

Finally, Freeman asserts the trial court erred in admitting tape recorded conversations between the informant, Russell Singleton, and him. He objected to the tapes prior to trial on the basis of poor audio quality.

In *Wallace v. State* (1986), Ind., 498 N.E.2d 961, 965, this Court required that sound recordings be preceded by a foundation which shows:

1. They are authentic and correct;

2. The testimony elicited was freely and voluntarily made, without any kind of duress;

3. All required warnings were given and all necessary acknowledgments and waivers were knowingly and intelligently given;

4. They do not contain matter otherwise not admissible into evidence; and

5. They are of such clarity as to be intelligible and enlightening to the jury.

It is within the trial court's discretion to admit such recordings into evidence. *Hobson v. State* (1984), Ind., 471 N.E.2d 281, 286.

At trial, Special Agents Lillig and Casey identified the recordings and established their foundations. The tapes were then played for the jury. Prior to trial the court listened to the tapes to determine their audibility and found they were sufficiently clear. The tapes corroborated the testimony of Moore, Singleton, Lillig and Casey concerning the conversations.

The trial court is affirmed.

DeBRULER, GIVAN and DICKSON, JJ., concur.

SHEPARD, C.J., disqualifies himself under Canon 3(c).