**Philip L. McCOLLUM, Appellant (Defendant Below),**

v.

**STATE OF Indiana, Appellee (Plaintiff Below).**

No. 79S00–9104–CR–296.

Supreme Court of Indiana.

Dec. 12, 1991.

Jill E. Greuling, Edgewater, N.J., for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Philip L. McCollum was convicted of four class A felonies: two counts of conspiracy to commit dealing in cocaine, Ind.Code §§ 35–48–4–1 (West Supp.1991), 35–41–5–2 (West 1985), and two counts of dealing in cocaine, Ind.Code § 35–48–4–1. He was sentenced to forty years on each count. Each conspiracy count was ordered to run concurrently with each associated dealing count. These two sets were ordered to be served consecutively. In addition, McCollum was found to be an habitual offender and one of the sentences for dealing was enhanced by thirty years. The total was 110 years.

Appellant raises the following issues in this direct appeal:

I. Whether the trial court erred in not allowing a continuance so appellant's private counsel could represent him;

II. Whether counsel's performance was ineffective;

III. Whether a tape-recorded conversation between appellant and a police informant was properly admitted into evidence;

IV. Whether the cocaine purchased from appellant was properly admitted;

V. Whether appellant was denied the right to confront and cross-examine a witness;

VI. Whether the trial court erred by refusing appellant's instruction concerning informant testimony;

VII. Whether the trial court erred by denying a mistrial after a comment on appellant's post-arrest silence;

VIII. Whether reversible error was committed during the habitual portion of the trial;

IX. Whether there was sufficient evidence to sustain the convictions; and

X. Whether the sentence was excessive.

The evidence favorable to the jury's verdict was as follows. In the summer and fall of 1986, Daniel Reynolds was a confidential informant for the Indiana State Police. In exchange for leniency on a drug charge he agreed to work with the police in conducting controlled buys of drugs and providing information about the drug business in the Lafayette area. Controlled buys are drug purchases made by a police

informant under strict police supervision and control.

In mid July 1986, Reynolds met with William Kolb and discussed whether Kolb could sell him some cocaine. Kolb said he would check on it and later contacted Reynolds to say he had found a cocaine source. Kolb identified his source as Phillip McCollum.

Kolb contacted McCollum and told him he wanted four ounces of cocaine to sell to someone. Appellant brought four ounces of cocaine to Kolb's house in August 1986. Kolb then contacted Reynolds to inform him that he had the cocaine to sell. Reynolds came over that night, the two discussed the quality and price of the cocaine, and Reynolds sampled it. Kolb told Reynolds that McCollum wanted $2200 per ounce. At Reynolds' request Kolb agreed to talk to appellant about selling it at a lower price. Reynolds did not purchase any cocaine that night because he did not have enough money.

The next day appellant came back to Kolb's house to collect the money from the drug sale. Kolb explained why the sale had not yet taken place, they discussed the price of the cocaine, and then the two went to a nearby convenience store to call Reynolds. That evening, August 20, 1986, Reynolds made a controlled buy of one ounce of cocaine with money supplied by the police. During the sale Kolb again told Reynolds that Phillip McCollum was his supplier.

Reynolds also discussed with Kolb the possibility of buying more cocaine but dealing directly with McCollum. Kolb told appellant about Reynolds' proposal but declined because Reynolds had recently been arrested. Appellant also thought Reynolds was not serious about purchasing large quantities of cocaine since the first sale had been for only one ounce.

After Reynolds purchased the cocaine and left the house, Kolb went to the hotel where McCollum was staying to deliver the money from the sale and the unsold cocaine. No one answered at the hotel room. Later that evening, after Kolb had returned home, appellant came over to collect the money. He had Kolb keep the unsold cocaine until the next day. Officers Hole and Shireman of the Indiana State Police and Special Agent Frank Fabian of the FBI monitored this controlled buy. They watched Kolb and Reynolds and Kolb and McCollum on the way to meetings with each other. They also observed the movements of Kolb and McCollum after the controlled buy.

In late October 1986, Reynolds again attempted to persuade Kolb to set up a cocaine buy directly with appellant. To show Kolb that he was serious, Reynolds went to Kolb's house and showed him $40,000 in cash which had been provided by the FBI. Although Kolb told McCollum about the money, he still refused to meet with Reynolds directly.

About two weeks later on November 8, appellant brought another four ounces of cocaine to Kolb at his house and he also left his van in Kolb's driveway. After appellant left, Kolb called Reynolds and a meeting was arranged for that evening. Reynolds made another controlled buy of the four ounces of cocaine, paying $8800. Kolb told Reynolds the cocaine came from McCollum. Appellant picked the money up from Kolb the next day. Again, all these events were observed by the Indiana State Police and the FBI.

The same procedure was followed for each controlled buy and meeting between Kolb and Reynolds. Reynolds would first meet with the police and be strip searched and a body transmitter would be attached to his person. Reynolds was then provided with cash to make the purchase. While Reynolds and Kolb were together the police were able to monitor their conversations through the transmitting device. After the meeting was over Reynolds would meet the police at a designated spot. He would be strip searched again, the body transmitter would be removed, and he would turn over the drugs purchased and any remaining money.

Kolb and his wife were arrested in late April 1987. In exchange for leniency for himself and his wife, Kolb agreed to cooperate in the continuing investigation of

McCollum. Kolb called appellant to try to arrange another drug deal and recorded this conversation with a police recorder. A meeting was set up for noon the next day, April 26, 1987. Surveillance was maintained at the Kolb residence and a tape recorder was placed under the couch in the living room. Appellant was late to the meeting, however, and the tape ran out. Kolb called Agent Fabian who came to Kolb's house to fix it. One or two minutes after Fabian's arrival appellant showed up, so Fabian hid behind a bedroom door. Agent Fabian was able to hear the conversation between appellant and Kolb. McCollum and Kolb discussed arrangements for a cocaine deal, the quality of the cocaine, whether Kolb knew how the ultimate buyer would use the cocaine, and money Kolb owed appellant for previous drug transactions. Appellant said he would come back in a day or two with the cocaine and Kolb indicated that he would be able to have cash for some of it. Police attempted surveillance of this meeting, but appellant never showed up. Kolb also attempted to set up a meeting with appellant but was unable to reach him. Appellant was arrested on April 30, 1987.

The testimony against McCollum was consistent. The witnesses included the participating officers and agents, Reynolds, Kolb, and Kolb's wife.

### I. Failure to Grant Continuance

■ Appellant claims the trial court abused its discretion by failing to grant a continuance so that private counsel could represent him.

From May 25, 1987, until April 12, 1988, appellant was represented by private counsel, Carl J. Sandy. On April 12, Sandy withdrew his appearance and the court ordered appellant to appear on April 26 to report who would represent him. On April 26, 1988, Judge Thayer appointed a "temporary" public defender for McCollum because he had not yet employed private counsel. The trial was set for July 12, 1988. On July 6, McCollum, by his public defender, moved for and received a continuance. The trial was reset for October 11,

1988. Between July and September a series of hearings occurred regarding appellant's bond and a protective order. Appellant was represented at these hearings by his appointed public defender. This lawyer eventually tried the case.

■ Appellant presents the affidavit of attorney David J. Coleman, who states that on or about October 3, 1988, he contacted Judge Thayer's office and the prosecutor expressing his desire to enter an appearance for McCollum and request a continuance. He says that he decided not to enter an appearance because he was informed by the judge's office that a continuance would not be forthcoming.

Where a defendant is given an opportunity to secure counsel of his own choosing but fails to do so he cannot complain on appeal that he was compelled to go forward with court-appointed counsel. *Page v. State* (1956), 235 Ind. 628, 137 N.E.2d 405. Appellant had at least five months to hire private counsel but failed to do so until eight days before trial. Moreover, appellant did not claim any particular problems with his public defender, and his public defender was prepared and ready for trial. It was not an abuse of discretion to deny the continuance. See *Potter v. State* (1983), Ind., 451 N.E.2d 1080.

### II. Ineffective Assistance of Counsel

■ Appellant claims that he was denied effective assistance of counsel. He lists thirteen instances where counsel's assistance allegedly fell below the proper standard.

■ To prevail on a claim of ineffective assistance of counsel appellant must meet a two-part test. He must show: 1) his counsel's performance fell below an objective standard of reasonableness, and 2) there is a reasonable probability that but for counsel's deficient performance the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Mott v. State* (1989), Ind., 547 N.E.2d 261. Appellant must present strong and convincing evidence to rebut the

presumption that counsel was competent. *Clark v. State* (1990), Ind., 561 N.E.2d 759.

Appellant claims that his counsel was ineffective because he failed to call three crucial defense witnesses. The first of these, Todd Bahler, later lived in the house where Kolb and McCollum discussed the cocaine sale that was overheard by Agent Fabian. According to his affidavit, Bahler would have testified that when the furnace was running conversations taking place in the living room could not be heard by someone in the back room. Kolb testified, however, that the furnace was not turned on the evening he spoke with appellant while Fabian was hiding in the back room. Bahler's testimony thus would have had little value and counsel acted reasonably by not calling him at trial.

Appellant also claims that Cindy Hurt and Chris Rottler were crucial witnesses who should have been called. Hurt would have testified that her brother, William Kolb, told her that he would "do anything" to stay out of jail. Rottler would have testified that he heard Hurt repeat this.

Kolb testified on direct examination that he agreed to cooperate with police in exchange for leniency. On cross-examination defense counsel more deeply probed Kolb's motive for testifying. He stressed the fact that Kolb faced a potential 100-year sentence for two counts of dealing in cocaine and that in exchange for cooperating with the police he and his wife did not spend one day in jail. Because Kolb's motive for testifying was so obvious calling these two witnesses would have added little or nothing.[1] Counsel was not ineffective for failing to call them.

■ Appellant also complains of his lawyer's failure to request that a comment be stricken and the jury be admonished after counsel objected to a statement made by Kolb that appellant thought he was being watched by the police. It was reasonable for counsel not to request these additional measures. His objection had been sustained. The effect of the improper comment was minor, and by requesting additional measures counsel could have drawn unnecessary attention to the remark. Counsel made a judgment call; his performance here was not ineffective.

■ Appellant next notes that while counsel did object to the admission of fingerprint cards during the habitual phase of the trial, he failed to object on all possible grounds. Specifically, he failed to object on the basis that the cards contained evidence of previous arrests which did not pertain to the offenses on which the habitual offender count was based. Although counsel should have objected on this basis, this isolated lapse does not rise to the level of ineffective assistance. In light of the other evidence presented regarding the prior felonies, any prejudice caused by admission of this evidence was too minimal to have affected the verdict.

■ Finally, appellant claims that counsel should have objected when the State asked Kolb if he had any drug dealings with McCollum other than those related to the offenses charged. Again, although counsel could have objected here, any prejudice caused by Kolb's answer was far too minimal to have affected the outcome of the trial. Counsel's performance was not ineffective.

The foregoing contentions are appellant's weightiest claims attacking his lawyer's performance. Neither these allegations nor those we have not mentioned sustain appellant's claim.

### III. Admitting the Tape Recording

■ Appellant claims the court erred in admitting at trial State's Exhibit Five, the tape-recorded telephone conversation between appellant and Kolb which occured on April 25, 1987. The foundational requirements for admission of a tape recording made in a non-custodial setting are: 1) that the recording is authentic and correct, 2) that it does not contain evidence otherwise inadmissible, and 3) that it be of such clarity as to be intelligible and enlightening

---

1. Likewise, the trial court did not err in refusing to grant a new trial based on Rottler's testimony, as this does not amount to newly discovered evidence.

to the jury. *Cf. Freeman v. State* (1989), Ind., 541 N.E.2d 533, 538. The trial court has wide discretion in determining whether these criteria have been met. *Hobson v. State* (1984), Ind., 471 N.E.2d 281, 286.

Appellant objected to admission of the recording. He contends the foundation and chain of custody were inadequate and that profanity on the recording caused its prejudicial effect to outweigh its probative value. Appellant also claims the contents of the recording were cumulative.

■ We conclude that sufficient foundation was laid. Kolb testified that he listened to the recording the night before he testified and that it was a true and accurate recording of his conversation. The recording did not contain any otherwise inadmissible evidence, nor was there any problem with its clarity. There is no chain of custody requirement for admission of tape recordings. The foundational requirements stated above are sufficient to ensure that there was no tampering with the evidence.

■ The probative value of the recording to show whether McCollum was in fact Kolb's cocaine supplier was great. The minimal profanity contained in the conversation was not so prejudicial as to outweigh this probative value. Finally, it is not reversible error to admit contents of a recording that are merely cumulative. *Fassoth v. State* (1988), Ind., 525 N.E.2d 318. The tape recording was properly admitted.

### IV. Admitting the Cocaine

■ Appellant objected to admission of Exhibits One and Two, the cocaine Reynolds allegedly purchased from Kolb, claiming that the chain of custody was inadequate. While the State must establish the chain of possession it need only demonstrate a reasonable assurance that the evidence passed to trial in an undisturbed condition. *Hensley v. State* (1986), Ind., 489 N.E.2d 62. The State is not required to exclude every possibility of tampering. *Id.* Where drugs are in the continuous custody of the police, we will not engage in specula-

tion about untoward activity. *Jeffers v. State* (1985), Ind., 485 N.E.2d 81.

Immediately after the completion of each controlled by, the police confiscated the cocaine purchased by Reynolds. The cocaine was in continuous police custody until being brought to the Indiana State Police Laboratory for examination. Meticulous procedures were followed in labeling and packaging the two exhibits. The officers that handled the evidence identified the exhibits produced at trial as the same evidence that was recovered from Reynolds after the drug buys. They also testified that the exhibits were in the same condition as they were in when that officer dropped them off at the police laboratory.

A drug chemist with the Indiana State Police Laboratory who tested Exhibits One and Two testified that it is standard procedure for evidence to remain in the drug vault until he is ready to examine it. He indicated that Exhibit One was received by the evidence custodian on August 21, 1986, at 2:50 p.m. and that Exhibit Two was received on November 12, 1986, at 1:08 p.m. He had these exhibits removed from the drug vault on August 25, 1986, and November 13, 1986, respectively. Both exhibits were returned to the vault later the same day after he finished conducting his tests.

Appellant argues that there is a gap in the chain of custody because the drugs were left with an "unidentified evidence technician" at the laboratory. The fact that the evidence technician's name is not known and the technician did not testify does not amount to a gap in the chain of custody. The evidence presented at trial showed that the cocaine was in continuous police possession. There has been no allegation of tampering, substitution, or mistake. The chain of custody was sufficient and the exhibits were properly admitted.

### V. Error in Restricting Cross–Examination

■ Appellant claims that his right to cross-examine witnesses about possible bias was violated when the court sustained an objection to a defense question to Deb-

bie Kolb regarding her relationship with her husband William Kolb. On direct examination Debbie testified that she had been married to William Kolb for eight years. On cross-examination she testified that she and William were presently separated. When defense counsel attempted to probe this further, however, she refused to answer and the State objected to the questioning. The defense sought to illicit testimony from Mrs. Kolb that her husband beat her and was constantly drunk. The court sustained the State's relevancy objection.

The trial judge has discretion to determine the scope of cross-examination and we will reverse only where there was a clear abuse of discretion. *Fassoth*, 525 N.E.2d 318. Debbie Kolb's testimony corroborated previous testimony of William Kolb and Reynolds concerning the cocaine buys. We do not see how the information the defense sought to elicit would be relevant to show bias on Debbie's part toward the appellant. The trial court acted within its discretion in sustaining the relevancy objection.

### VI. Witnesses Who Testify in Return for Leniency

 Appellant claims the court erred in refusing his tendered instruction number three, which advised the jury that they should take greater care in evaluating the testimony of witnesses who testify in exchange for leniency or immunity from punishment. McCollum finds support for his position in *Newman v. State* (1975), 263 Ind. 569, 334 N.E.2d 684, but this claim was rejected by this Court in *Morgan v. State* (1981), 275 Ind. 666, 419 N.E.2d 964, where we said:

> In *Newman*, we held that the failure to disclose an agreement of leniency between an accomplice and the State constituted reversible error. That holding requires that the agreement be disclosed to the jury, not that a cautionary instruction pertaining thereto be given. [S]uch an instruction would ... unduly disparage[ ] the testimony of the defendants' accomplices, and for this reason, the refusal to give it was proper.

*Morgan*, 275 Ind. at 673, 419 N.E.2d at 968–69 (citations omitted).

The court's instruction number fifteen, which dealt generally with the weight or credit to be accorded to any witness's testimony, correctly stated the law. The court properly gave its instruction and refused appellant's instruction number three.

### VII. Refusal to Grant Mistrial

 Appellant claims that he was denied a fair trial and that his fifth amendment right against self-incrimination was violated because the trial court refused to grant a mistrial after an improper comment by Officer Shireman, a prosecution witness. On direct examination the State asked Officer Shireman, "And what was the next contact you had with either Mr. Kolb or Mr. McCollum?". He responded that his next contact with appellant was when McCollum was arrested; he said that after being advised of his rights, appellant declined to make a statement. Defense counsel immediately objected to this comment and the court sustained the objection and ordered the comment stricken from the record. The court denied a defense motion for a mistrial.

 Whether to grant a mistrial is within the discretion of the trial court and is afforded great deference on review. *Tapia v. State* (1991), Ind., 569 N.E.2d 655. In *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986), we set out criteria for determining if a comment on a defendant's post-arrest silence after *Miranda* warnings can be considered harmless: 1) the use to which the prosecution puts the post-arrest silence; 2) who elected to pursue the line of questioning; 3) the quantum of other evidence indicative of guilt; 4) the intensity and frequency of the reference; and 5) the availability to the trial judge of an opportunity to take curative measures.

In this case the prosecution did not attempt to use appellant's post-arrest silence to prove his guilt. Although it was a prosecution question that elicited the comment, the question did not appear to be a pur-

poseful search for the response it elicited. This one comment was the sole reference to appellant's post-arrest silence. There was a great deal of other evidence indicating guilt. Finally, when defense counsel objected to the comment, the court sustained the objection and had the comment stricken from the record. We conclude the comment was harmless error. The trial court did not err in refusing to grant a mistrial.

### VIII. Habitual Offender Claims

■ Appellant claims that a number of errors occurred during the habitual offender portion of his trial. First, he alleges the court erred by permitting the State to amend the habitual offender information on the day of trial to reflect the correct date of conviction for one of the prior felonies. The amendment changed the date of conviction from November 20, 1979, to August 23, 1979.

Under Ind.Code § 35-34-1-5(c) (West 1986), a charging information may be amended at any time, in respect to any defect, so long as it does not prejudice the substantial rights of the defendant. Appellant has not alleged or shown that he was prejudiced or misled in any way by the incorrect date shown in the original information. Moreover, he has not shown that the amendment was a surprise for which he could not have prepared or that the identity of the conviction was unknown to him. *Haymaker v. State* (1988), Ind., 528 N.E.2d 83. There was no error in allowing the amendment.

■ Second, appellant claims that it was error to admit State's Exhibits 1A-4A because they were not properly authenticated. Appellant's objection to Exhibit 1A, fingerprint cards, is that sufficient chain of custody was not established. This claim is without merit. There is no chain of custody requirement for certified copies of public records such as fingerprint cards. *Duncan v. State* (1980), 274 Ind. 144, 409 N.E.2d 597.

■ Appellant claims Exhibits 2A and 3A were not certified at all. Although no certifications appear *on* the copies of these documents in the record, it appears that certifications do exist and were attached to the original documents at trial. Defense counsel referred to the presence of certifications when objecting to the admission of the documents. Moreover, by comparing the cause numbers on the certifications with the cause numbers on the documents it appears that the missing certifications are present in the record, but in the wrong places. Contained in Exhibit 4A are two extra certifications which bear the cause number 3415. Exhibit 4A contains documents referring to cause number 4445. The extra certifications apparently belong with Exhibits 2A and 3A which both contain documents referring to cause number 3415. Since the record indicates that the proper certifications were present at trial, we find no error in the admission of Exhibits 2A and 3A.

■ Appellant also claims that the certification for Exhibit 4A is incomplete because it does not contain a seal from the clerk's office as required by Ind.Code § 34-1-17-7 (West 1983). Exhibit 4A contained a certification by the clerk of Tippecanoe Circuit Court that the foregoing attached records were full, true and correct copies and that she was the legal custodian of such records. Indiana Trial Rule 44 provides alternative methods for validating official records. *Earls v. State* (1986), Ind., 489 N.E.2d 516. Trial Rule 44(A)(1) provides in pertinent part that a record may be evidenced by "... a copy attested by the officer having the legal custody of the record, or by his deputy. Such ... copy need not be accompanied by proof that such officer has the custody." Exhibit 4A was certified by the officer that had legal custody. The rule does not, by its terms, require that her authority and custody of these records be established by a statement under seal. *Brackens v. State* (1985), Ind., 480 N.E.2d 536.

■ Appellant argues that even if the certification was proper, the documents attached after the certification are not certified and therefore are a nullity. In *Miller v. State* (1990), Ind., 563 N.E.2d 578, 584,

this Court found a similar certification was sufficient where the certification spoke of "foregoing" documents but was stapled to the top rather to the bottom of the documents. We found that like the situation in *Cavendish v. State* (1986), Ind., 496 N.E.2d 46, the authenticity of the documents was not in question because of the placement of the certification sheet. *Miller*, 563 N.E.2d 578. In *Miller* nothing preceded the clerk's certification, the name of the case in the certification was the same as that on the documents, and the cause numbers matched. *Id.* Here, although there were documents attached to the top of the certification, the cause numbers and names matched.

Third, appellant claims that the evidence presented on the habitual offender count is insufficient. To seek an enhancement under the habitual offender statute, the State must show the defendant has been twice convicted and sentenced for felonies. The commission of the second offense must have been subsequent to the sentencing on the first offense, and the commission of the principle offense on which the enhancement is sought must be subsequent to the sentencing on the second conviction. *Zavesky v. State* (1987), Ind., 515 N.E.2d 530.

Appellant asserts that his 1971 conviction for theft cannot serve as one of the prior felonies for two reasons: 1) because there was insufficient proof presented to the jury that this conviction was a felony, and 2) because he was sentenced to only one year for the offense, not more than one year.

Although this author has argued to the contrary (*Cavendish*, 496 N.E.2d 46), the prevailing rule with regard to appellant's first argument is that whether an offense is a felony is not a question of fact for the jury, but a matter of law, predetermined by the legislature and applied by the judiciary. *Lee v. State* (1988), Ind., 531 N.E.2d 1165; *Griffin v. State* (1981), 275 Ind. 107, 415 N.E.2d 60. Therefore, the State did not need to present the jury with proof that the 1971 conviction was a felony.

Appellant's second argument appears to be that the 1971 conviction was not a felony because he was not sentenced to more than one year. Under the present habitual offender statute, a felony is defined as a conviction with respect to which the convicted person might have been imprisoned for more than one year. Ind.Code § 35-50-2-1(b) (West Supp.1991). The determination of whether or not an offense is a felony is based on the penalty available under the law at the time of the commission of the act. *Ross v. State* (1980), 274 Ind. 588, 413 N.E.2d 252.

Appellant was convicted in 1971 for theft of property valued at less than $100 in violation of Burns Annot.Stat. § 10–3030 (1971 Supp.). The potential penalty for that offense was one to five years. Burns Annot.Stat. § 10–3039 (1971 Supp.). Therefore, this offense qualifies as a felony under Ind.Code § 35-50-2-1(b). That the crime if committed today would not be a felony or that appellant was sentenced to only one year is consequently irrelevant. *See id.; Underhill v. State* (1981), Ind., 428 N.E.2d 759; *Holt v. State* (1984), Ind., 463 N.E.2d 466. The 1971 conviction was appropriately used as one of the prior felonies to support the habitual offender finding.

Appellant also argues that the State failed to connect him to the two prior felony convictions. He is wrong. Exhibit 5A contained prison records for the 1979 battery conviction. These papers included fingerprints which were identified as McCollum's, photographs of McCollum, and other identifying information. This is sufficient to show that this Philip McCollum is the same Philip McCollum convicted of battery. *Meredith v. State* (1987), Ind., 503 N.E.2d 880. Exhibit 1A contained a set of fingerprint cards taken on August 3, 1970, when McCollum was arrested for burglary. The fingerprints were identified as belonging to this appellant. Appellant was charged with burglary on August 12, 1970, and on January 8, 1971, he pled guilty to theft by obtaining and exerting unauthorized control. Evidence connecting appellant to the conviction can be circumstantial. *Sapp v. State* (1987), Ind., 513 N.E.2d 178.

This evidence sufficiently supports the inference that appellant is the same Philip McCollum earlier convicted of theft. Therefore, we conclude the evidence was sufficient to support the habitual offender determination.

■■■■ Finally, appellant contends that the court committed fundamental error by providing the jury with a verdict form which asked them to decide whether he was or was not guilty of the two underlying felonies, but did not require the jury to specifically state whether he was or was not an habitual offender pursuant to Ind. Code § 35–50–2–8. For an error to be considered fundamental, "the error must be blatant, and the potential for harm must be substantial and appear clearly and prospectively." *Terry v. State* (1984), Ind., 465 N.E.2d 1085, 1087 (quoting *Nelson v. State* (1980), 274 Ind. 218, 409 N.E.2d 637, 638). In an habitual offender proceeding, the jury's function is to determine whether the defendant is an habitual offender as defined by statute. *Hensley v. State* (1986), Ind., 497 N.E.2d 1053, 1057. The verdict form used here was erroneous. A proper verdict form would require the jury to find whether the defendant is an habitual offender or not.[2] We see no blatant error here, however, nor a substantial potential for harm. Therefore, use of this form was not fundamental error.

### IX. Sufficiency of the Evidence

■■■■ Appellant contends that there was not sufficient evidence to convict him on the offenses charged. Judging the sufficiency of the evidence on appeal, this Court will neither re-weigh the evidence nor judge the credibility of the witnesses. We look only to the evidence most favorable to the verdict together with all reasonable inferences drawn therefrom. If there is substantial evidence of probative value to support the verdict, it will not be disturbed. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670.

Appellant argues there was insufficient evidence of agreement to support the conspiracy convictions. In *Freeman v. State* (1989), Ind., 541 N.E.2d 533, this Court set out the sufficiency standard with regard to a conspiracy conviction:

> A conspiracy entails an intelligent and deliberate agreement between the parties. It is not necessary, however, to present direct evidence of a formal express agreement. The agreement as well as the requisite guilty knowledge and intent may be inferred from circumstantial evidence alone, including overt acts of the parties in pursuance of the criminal act.

*Id.* at 536. (citations omitted).

There was sufficient evidence presented from which the jury could infer an agreement between McCollum and Kolb to supply cocaine to Kolb for sale to another (in this case, Reynolds). In addition, sufficient evidence was presented which could lead the jury to conclude that there were two separate conspiracies rather than one ongoing conspiracy.

■■■■ Appellant also contends that the evidence was not sufficient to sustain his convictions for dealing in cocaine. Appellant's argument that there was no evidence showing the cocaine he delivered to Kolb was the same cocaine that Kolb sold to Reynolds is without merit. As the facts outlined above show, there was more than sufficient evidence presented to support these convictions.

### X. Was the Sentence Excessive?

■■■■ Appellant actually raises two issues regarding his sentence. First, he claims that the 110–year sentence is disproportionate, excessive, and cruel and unusual in violation of the eighth amendment and the Indiana Bill of Rights. He bases his argument on the lenient treatment of the others involved in the cocaine buys, Reynolds and the Kolbs.

As a matter of eighth amendment law, McCollum's claim plainly fails. *Solem v.*

---

**2.** A better practice would ask the jury to indicate its findings as to which, if any, prior felony convictions have been proven and separately find whether the defendant is an habitual offender or not.

*Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). In reviewing whether a sentence violates the Indiana constitution this Court examines the nature and gravity of the present felony and the nature of the prior offenses. *Taylor v. State* (1987), Ind., 511 N.E.2d 1036. Appellant was convicted of four class A felonies, two conspiracy to deal cocaine convictions and two convictions for dealing cocaine. These are serious offenses. Class A felony convictions carry a presumptive sentence of thirty years. Up to twenty years can be added for aggravating circumstances and up to ten years may be subtracted for mitigating circumstances. Ind.Code § 35–50–2–4 (West 1986). Appellant had a long criminal record which included burglary, felony battery, assault and battery on a police officer, and check forgery. Considering the gravity of the present felonies and the nature of the prior offenses, the sentence imposed was not unconstitutional. That others who cooperated with the police as part of a plea agreement received better treatment is irrelevant.

Second, appellant claims that the record does not indicate that the trial judge received or considered a presentence report or mitigating circumstances. He also claims that the record does not sufficiently demonstrate that aggravating and mitigating circumstances were balanced. Deciding whether a presumptive sentence will be enhanced because of aggravating circumstances and whether terms will be served concurrently or consecutively is within the discretion of the trial court. *Parrish v. State* (1987), Ind., 515 N.E.2d 516, 521. A trial court may enhance a sentence or impose consecutive terms or both. When it does, however, the record must show the sentence was based on consideration of the facts of the specific crime, aggravating and mitigating circumstances, and the relation of the sentence to the objectives to be served by that sentence. *Id.* There is no constitutional or statutory prohibition against using the same factors to both enhance a sentence and impose consecutive sentences. *Id.; Bish v. State* (1981), Ind., 421 N.E.2d 608.

Although appellant claims that the court failed to consider mitigating factors which clearly existed, he fails to identify those factors. Moreover, the transcript of the sentencing hearing shows that a presentence report was submitted and considered by the court. Additionally, the court received and read letters on appellant's behalf. This is a sufficient indication that mitigating circumstances, if any existed, were considered. A sentencing judge is not obliged to explain why he has chosen not to make a finding of mitigation. *See Beatty v. State,* 567 N.E.2d 1134 at 1137. The trial court did find the following aggravating circumstances: that appellant had a long history of crime and drug use, that there was a likelihood that the crime would reoccur, that appellant was in need of correctional treatment, and that there was some history of violence. The trial court did not abuse its discretion by enhancing the presumptive sentences and ordering consecutive terms.

The judgment of the trial court is affirmed.

DeBRULER, GIVAN, DICKSON and KRAHULIK, JJ., concur.