**Napoleon WILLIAMS, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–9610–CR–421.**

Court of Appeals of Indiana.

Sept. 25, 1997.

Robert C. Perry, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

SHARPNACK, Chief Judge.

Napoleon Williams appeals his conviction for attempted rape, a class B felony. The two issues raised for our review are:

1) whether the trial court erroneously admitted the video taped deposition of the victim taken while Williams was incompetent to stand trial; and

2) whether the evidence is sufficient to support the conviction.

We reverse.

The facts most favorable to the conviction follow. On November 10, 1994, K.S. worked as a waitress at a bar in downtown Indianapolis. After her shift ended, she went to another bar with some friends. At approximately 3:45 a.m., K.S. left the bar and walked to her car in a parking garage.

After K.S. got into her car and started it, she looked in her purse. As she did so, Williams opened the car door. Williams then pushed K.S. onto the passenger seat of her car and got approximately half way into the car. During the struggle, Williams told K.S. to lay still or he was going to kill her. Williams then hit K.S. on the head with his hand. On two or three occasions, K.S. felt Williams trying to pull down her pants. When K.S. screamed for help, Williams tried to put his hand on her mouth, but K.S. bit it. After K.S. succeeded in fighting off Williams, she discovered that he had unfastened her belt during the attack.

After Williams fled, K.S. shut and locked the door. K.S. then drove to the attendants' booth in the garage and requested that they call the police. She described Williams to the responding officer. A few minutes later, the police stopped Williams, and K.S. identified him as the perpetrator.

On November 15, 1994, the State charged Williams with attempted rape. On January 19, 1995, defense counsel moved to determine Williams' competency to stand trial. After a

hearing on March 1, 1995, the trial court concluded that Williams was competent to stand trial.

On April 7, 1995, defense counsel filed a second petition requesting a determination of Williams' competency to stand trial. The trial court appointed a third psychiatrist to examine Williams. The third psychiatrist submitted his report to the trial court on May 5, 1995, finding that Williams was incompetent. On May 17, 1995, the trial court conducted a hearing and determined that Williams was not competent to stand trial.

On September 19, 1995, the trial court received a report that Williams was competent to stand trial. After a bench trial on November 17, 1995, the trial court found Williams guilty as charged. The trial court later sentenced him to fourteen years. Williams now appeals the conviction.

First, we consider whether the trial court erroneously admitted the video taped deposition of K.S. which was taken shortly after Williams had been found incompetent to stand trial. Specifically, Williams contends that he was denied the right to due process, the right to confront witnesses against him, and the right to meaningful representation by counsel when the trial court admitted the deposition because he was not competent at the time the deposition was taken.[1] Williams contends that although he was physically present at the deposition with defense counsel, he could not meaningfully participate in the proceedings. In addition, he contends that allowing the deposition to be taken under such circumstances and admitted into evidence was reversible error.

---

1. We note that the State asserts that Williams waived his right to confront K.S. because he voluntarily refused to take his antipsychotic medication. The State cites authority for the well-accepted proposition that the right to confrontation may be waived under certain circumstances, but fails to cite authority and provide a persuasive argument for its theory that the voluntary refusal to take medication can result in the waiver of the right to confront witnesses. To the contrary, in *Riggins v. Nevada*, 504 U.S. 127, 134–135, 112 S.Ct. 1810, 1814–1815, 118 L.Ed.2d 479 (1992), the Supreme Court held that a defendant being held while awaiting trial had

Fourteenth Amendment due process protection against forced medication without a showing of medical necessity. The Court also noted that it did not have before it the "question of whether a competent criminal defendant may refuse antipsychotic medication if cessation of medication would render him incompetent at trial...." *Id.* 504 U.S. at 134–136, 112 S.Ct. at 1815. The record here is indicative of a chronic schizophrenic with a long history of noncompliance as to medication rather than a person seeking to manipulate the justice system through chosen incompetence.

■ The decision of whether to admit evidence is in the sound discretion of the trial court and will be afforded a great deal of deference on appeal. *Tynes v. State*, 650 N.E.2d 685, 687 (Ind.1995). In a criminal prosecution, the State may take and use depositions in accordance with the Indiana Trial Rules. Ind.Code § 35-37-4-3. The Indiana Trial Rules provide as follows:

"The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

\* \* \* \* \* \*

(b) That the witness is outside the state, unless it appears that the absence of the witness was procured by the party offering the deposition. . . ."

Ind. Trial Rule 32(A)(3)(b). To determine whether previously recorded testimony may be used in court in lieu of live testimony, the trial court uses a two-step approach. *Freeman v. State*, 541 N.E.2d 533, 538 (Ind.1989). First, the State must demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant. *Id.* Next, the trial court must then determine that the statement to be used bears sufficient "indicia of reliability," usually by establishing that the defendant had an opportunity to cross-examine the witness. *Id.* The decision of whether to invoke the rule allowing admission of prior recorded testimony is within the sound discretion of the trial court. *Id.; State v. Owings,* 622 N.E.2d 948, 950 (Ind. 1993).

After defense counsel filed a second petition for examination to determine Williams' competency to stand trial, the trial court appointed a third psychiatrist, Dr. Rodney Deaton, to examine Williams. Thereafter, Dr. Deaton submitted his report in which he concluded that Williams was incompetent to stand trial. In his report, Dr. Deaton indicated that Williams had a psychiatric history dating back to his diagnosis of paranoid schizophrenia in 1977. For many years, Williams was at the Midtown Mental Health Center under court commitment. At the time of the competency evaluation, Dr. Deaton found that Williams' thought processes were highly disorganized and that he was "completely delusional about his current legal

situation." Record, pp. 95–96. According to Dr. Deaton, Williams was adamant that his only current offense was a criminal trespass charge filed by his mother. Williams believed that he would be tried in Criminal Court 1 by the late Judge Transburg or by "his remains" rather than in Criminal Court 5 by Judge Miller. Record, p. 95. Dr. Deaton stated that Williams was "impervious to any suggestion" that his theory was not true. Record, p. 96. Dr. Deaton further found that Williams had no present, rational understanding of the proceedings and was unable to "cooperate with anyone in the defense of his actual, current case." Record, p. 96. Williams insisted to Dr. Deaton that his defense counsel was Grant W. Hawkins and would not accept that his counsel was actually Novella Nedeff.

On May 17, 1995, the trial court conducted a hearing during which Dr. Deaton testified about his report and evaluation. The trial court determined that Williams was not competent to stand trial and ordered Williams committed to the Department of Mental Health for treatment. The trial court found that Williams did not have sufficient comprehension to understand the nature of the criminal action against him and to make his defense.

Ten days after the incompetency finding, the State filed its notice to take a deposition to preserve testimony for trial. The State proposed to take a trial deposition of K.S. because she was leaving shortly for overseas and would not be available for trial.

■ The trial and conviction of one without adequate competence is a denial of federal due process and a denial of a state statutory right as well. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Brewer v. State*, 646 N.E.2d 1382, 1384 (Ind.1995). A defendant who has been found incompetent to stand trial is unable to consult rationally with counsel and to factually comprehend the nature of the proceedings against him. *Brewer*, 646 N.E.2d at 1384; *Culpepper v. State*, 662 N.E.2d 670, 674 (Ind. Ct.App.1996), *reh'g denied, trans. denied.*

■ If Williams could not constitutionally be tried during the period of incompetency, it

follows that the State could not take a deposition which was to be used at trial as a substitute for testimony during the period he was incompetent. The circumstances of this case are particularly important because K.S. was the complaining witness and there were no other eye witnesses to the crime. In other words, this case turned largely on the word of K.S. against that of Williams. As such, Williams' ability to effectively and carefully cross-examine K.S. was critical to the presentation of a defense. In light of Dr. Deaton's testimony and report indicating that Williams believed his mother was charging him with criminal trespass, Williams could not have assisted his counsel in effectively cross-examining K.S. In fact, Williams did not even believe that Nedeff was his defense counsel.

■ Because Williams was not able to effectively cross-examine K.S., the indicia of reliability for the prior recorded statement was insufficient for it to be admissible at the subsequent trial. *See Freeman*, 541 N.E.2d at 537. Therefore, we conclude that under the circumstances of this case where, the State deposed the victim with the intention of introducing the deposition at trial after Williams had been found incompetent by the trial court, the trial court abused its discretion by admitting the deposition. The erroneous admission of the deposition warrants a reversal of the conviction for attempted rape because the evidence was critical to the State's case against Williams. Accordingly, we reverse the conviction.

■ Having determined that a new trial is required due to the trial court's erroneous admission of the deposition, we also address Williams' sufficiency of the evidence claim to ensure that the Double Jeopardy Clause of the federal constitution will not be violated by retrial. Although double jeopardy bars retrial in cases of reversal for insufficient evidence, it does not bar retrial in cases of reversal for trial error. *Burks v. United States*, 437 U.S. 1, 14–15, 98 S.Ct. 2141, 2148–2149, 57 L.Ed.2d 1 (1978); *Brown v. State*, 659 N.E.2d 652, 657 (Ind.Ct.App.1995), *trans. denied.* "This is so because a determination that a defendant was convicted through a judicial process which was defective in some

fundamental respect implies nothing regarding the guilt or innocence of the defendant." *Brown*, 659 N.E.2d at 657. In *Lockhart v. Nelson*, the United States Supreme Court held:

"where the appellate court reverses the conviction for 'trial error' and the evidence offered by the State and admitted by the trial court—whether erroneously or not—would have been sufficient to sustain a guilty verdict, no double jeopardy question is presented on retrial."

*Lockhart v. Nelson*, 488 U.S. 33, 40–41, 109 S.Ct. 285, 290–291, 102 L.Ed.2d 265 (1988). Therefore, we consider whether the evidence, including the deposition, was sufficient to support Williams' conviction.

■ When reviewing the sufficiency of the evidence, we will neither reweigh the evidence nor judge the credibility of the witnesses; we will affirm the conviction if the evidence most favorable to the verdict and the reasonable inferences to be drawn therefrom provide probative evidence from which a reasonable trier of fact could infer guilt beyond a reasonable doubt. *Gant v. State*, 668 N.E.2d 254, 255 (Ind.1996).

■ Here, the State charged Williams with attempted rape. Rape is defined by Ind.Code § 35–42–4–1, which states in relevant part as follows:

"A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:

(1) the other person is compelled by force . . .

\* \* \* \* \* \*

commits rape, a Class B felony."

An attempt is defined by I.C. § 35–41–5–1, which states in part that "[a] person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." A "substantial step" toward the commission of a crime, for purposes of the crime of attempt, is any overt act beyond mere preparation and in furtherance of intent to commit an offense. *Hughes v. State*, 600 N.E.2d 130, 131 (Ind.Ct.App.1992).

Whether a defendant has taken a substantial step toward the commission of the crime, so as to be guilty of attempt to commit that crime, is a question of fact to be decided by the jury based on the particular circumstances of the case. *Id.* To affirm the conviction of attempted rape, the reviewing court must find that the evidence demonstrates that Williams knowingly or intentionally took a substantial step to compel the victim to have sexual intercourse with him by using force. *Id.*

The record reveals that Williams attacked K.S. while she was sitting in her car in a parking garage. He opened her car door and pushed her onto the passenger seat of her car. As K.S. and Williams fought, he attempted to pull down her pants. During the struggle, he told her to lay still or he was going to kill her. After K.S. succeeded in fighting off Williams, she discovered that he had unbuckled her belt during the attack. We conclude that sufficient evidence existed from which the factfinder could reasonably infer that Williams took a substantial step toward raping K.S. *See id.* Therefore, this cause can be retried without offending the protections afforded by the Double Jeopardy Clause. *See Brown,* 659 N.E.2d at 657.

For the foregoing reasons, we reverse Williams' conviction.

Reversed.

RUCKER and STATON, JJ., concur.