**Joseph B. GARNER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 31A01–0012–CR–437.**

Court of Appeals of Indiana.

Aug. 29, 2001.

Rehearing Denied October 15, 2001.

Matthew Jon McGovern, Louisville, KY, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Adam M. Dulik, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

1. *See* IC 35–42–4–3.

## OPINION

KIRSCH, Judge.

After a jury trial, Joseph B. Garner was convicted of two counts of child molesting as Class A felonies and one count of child molesting as a Class C felony.[1] He now appeals, raising the following issues for review:

I. Whether the charging information was unconstitutionally vague because it failed to specify particular acts and times of the sexual contact between Garner and the victim and therefore failed to give Garner necessary detail to prepare a defense.

II. Whether the trial court erred in admitting evidence of uncharged sexual conduct with the victim and her sister.

III. Whether the trial court erred in admitting into evidence the depositions of two witnesses who were not available to testify at trial because they were out of state on vacation.

IV. Whether the trial court erred in imposing consecutive maximum sentences based on its interpretation of IC 35–50–1–2(d)(1) and in its finding of aggravating and mitigating factors, and whether the resulting sentence is manifestly unreasonable.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In 1998, Garner became involved in a romantic relationship with Anna Camp. *Record* at 411. In July, he moved in with Camp and her three daughters, S.C., age thirteen, T.C., age twelve, and L.C., age

five. *Id.* at 410, 411, 413. In July 1999, the family moved to a different home. *Id.* at 474. While living with the family in the new home, Garner had sexual intercourse with T.C. on numerous occasions. *Id.* at 474, 478, 479. He also engaged T.C. in oral and anal sex, as well as fondling of her breasts. *Id.* at 490, 491. On one occasion, he directed T.C. and S.C. to perform oral sex on him simultaneously. *Id.* at 482.

Camp became suspicious and asked T.C. if she were having sex with Garner. *Id.* at 424. After T.C. replied affirmatively, Camp took her to the hospital to have a rape kit administered. *Id.* at 425. T.C. refused, but did have blood drawn. Id. The blood test revealed that T.C. was pregnant. *Id.* at 428. Subsequent DNA tests revealed that Garner was responsible for impregnating T.C. *Id.* at 589. Upon questioning, Garner admitted that he had vaginal and oral sex with T.C. "five or six" times. *Record* at 14.

Garner was arrested and charged with three counts of molesting T.C. by performing or submitting to sexual intercourse, performing or submitting to deviate sexual conduct, and performing or submitting to fondling or touching during the months of July to November 1999. *Id.* at 7–9.

At the trial, T.C. testified about specific instances of molestation and stated that Garner had engaged her in various sex acts more than once. *Id.* at 488. She also described the occasion on which she and S.C. performed oral sex on Garner. *Id.* at 482. S.C. later testified about that incident as well. *Id.* at 515.

Two persons involved in the chain of custody of the specimens upon which the DNA tests were performed were out of state on vacation. *Id.* at 240, 241. The trial court admitted the depositions of these witnesses into evidence in lieu of their live testimony. *Id.* at 249.

After the jury returned guilty verdicts on all three counts, the trial court, finding numerous aggravators, sentenced Garner to the maximum sentence on each of the three counts and ordered the sentences to run consecutively, for a total sentence of 108 years.

## DISCUSSION AND DECISION

### I. Sufficiency of the Charging Information

Garner contends that the charging information was unconstitutionally vague and failed to inform him adequately of the charges against him to allow him to prepare a defense. His first complaint is that none of the three charges specify a certain date upon which the offense was alleged to have been committed. Rather, each count charged only that Garner had committed the offense "sometime during the months of July, August, September, October, and/or November, 1999." *Record* at 7, 8, 9.

The State asserts that Garner has waived this argument because he failed to challenge the factual allegation in the charging information prior to his arraignment and trial. *See Jackson v. State,* 643 N.E.2d 905, 908 (Ind.Ct.App.1994), *trans. denied* (1995) (any challenge to the adequacy of an information must be made by a motion to dismiss prior to the arraignment; failure to do so is regarded as waiver). Garner attempts to avoid waiver of this argument by claiming that the error contained in the charging information amounts to fundamental error. In order to be fundamental, error must be so prejudicial to the rights of a defendant that he could not have received a fair trial. *Marshall v. State,* 602 N.E.2d 144, 147 (Ind.Ct. App.1992), *trans. denied.* Waiver may be avoided only if the mistake constitutes a clearly blatant violation of basic and elementary principles and the resulting harm

or potential for harm must be substantial. *Id.*

■ IC 35–34–1–2(a)(5) and (6) provide: "(a) The indictment or information shall be in writing and allege the commission of an offense by:

. . .

> (5) stating the date of the offense with sufficient particularity to show that the offense was committed within the period of limitations applicable to that offense;
> (6) stating the time of the offense as definitely as can be done if time is of the essence of the offense[.]"

An information that enables "the accused, the court and the jury to determine the crime for which conviction is sought" satisfies due process. *Grant v. State*, 623 N.E.2d 1090, 1093 (Ind.Ct.App.1993), *trans. denied* (1994) (quoting *Green v. State*, 575 N.E.2d 296, 299 (Ind.Ct.App. 1991), *trans. denied* (1992)).

■ Our courts have consistently held that where time is not of the essence of the offense, it is sufficient to allege time specifically enough to establish that the offense was committed within the period of limitations. *Vail v. State*, 536 N.E.2d 302, 302–03 (Ind.Ct.App.1989). Moreover, our supreme court has concluded that time is not of the essence in the crime of child molesting. *Barger v. State*, 587 N.E.2d 1304, 1307 (Ind.1992); *Hodges v. State*, 524 N.E.2d 774 (Ind.1988). The court explained that this conclusion was reasonable because "[I]t is difficult for children to remember specific dates, particularly when the incident is not immediately reported as is often the situation in child molesting cases. The exact date becomes important only in limited circumstances, including the case where the victim's age at the time of the offense falls at or near the dividing line between classes of felonies." *Barger v. State*, 587 N.E.2d at 1307.

Nonetheless, several defendants convicted of child molesting have challenged on appeal charging instruments which include a range of dates or a period of time. Most recently, in *Buzzard v. State*, 712 N.E.2d 547, 551–52 (Ind.Ct.App.1999), *trans. denied,* the defendant argued that the charging information filed against him, which alleged that the charged events took place over one and one-half years, was insufficient because it failed to describe with particularity the time the alleged molestations occurred. Although the evidence demonstrated that the molestations could not have occurred during a portion of that time, we found no fundamental error, citing earlier cases in which charging time periods of two weeks to over two years have been upheld against challenge. *Id.*

Similarly, in *Hodges*, 524 N.E.2d at 774, our supreme court considered an appellant's contention that the information against him failed to satisfy the requirements of IC 35–34–1–2(a)(5)–(6). The information alleged that the defendant had committed child molesting in a twenty-five month time period. The defendant asserted that this method of charging a broad time period prevented him from presenting alibi or insanity defenses. The court, however, disagreed, noting that a similar lack of specificity had been approved in prior cases. *Id.*

Finally, in *Hoehn v. State*, 472 N.E.2d 926, 928–29 (Ind.Ct.App.1984), the defendant was charged with molestation by fondling in a two-month period. The victim testified that the defendant had fondled him on three occasions and that the last of these was after school had been dismissed for the summer and a few days after attending a party at the defendant's arcade. We concluded that because time was not of the essence, and the date of the offense was stated as having occurred within the period of limitations and as definitely as

could be done based on the victim's memory, it was permissible to charge the defendant for a specified time period. Therefore, the trial court did not err in overruling the defendant's motion to dismiss. *Id.* *See also Jones v. State,* 581 N.E.2d 1256, 1257 (Ind.Ct.App.1991), *abrogated on other grounds by Steward v. State,* 652 N.E.2d 490 (Ind.1995) (rejecting defendant's argument that an information charging the molestation of the defendant's adoptive daughter during nearly two years was too general to allow him to raise an alibi defense); *Merry v. State,* 166 Ind.App. 199, 210, 335 N.E.2d 249, 256–257 (1975) (rejecting defendant's claim that charge of molestation within a three-year period was too broad).

■ Here, although the charging information did not specify the exact dates on which the criminal conduct was alleged to have occurred, it did narrow the range of dates to five months, a much smaller span of time than the three years that we approved in *Merry.* T.C. testified that she and her family moved in July 1999 and that the acts of molestation occurred after that time and ended before Christmas of that year. Based on this information, the State charged Garner with as much specificity as to time as was possible. Further, each charge identified the victim, the county, and the alleged offense. We conclude that the crimes were charged with adequate specificity to allow Garner to prepare a defense.

■ Garner also contends that the lack of specificity will allow him to be placed in double jeopardy for other crimes. However, we rejected this argument in *Buzzard,* explaining that it is the record, not just the indictment or the information, which provides protection from subsequent prosecutions for the same offense. *Buzzard,* 712 N.E.2d at 551–52 (citing *Phillips v. State,* 499 N.E.2d 803, 805 (Ind.Ct.App.1986)). Here, a review of the Record would clearly disclose the offense for which Garner is currently being punished and adequately protects him against the possibility of double jeopardy from future prosecutions.

Finally, Garner takes special exception to count II of the indictment, which alleged molestation by submitting to or performing criminal deviate conduct. He asserts that because that term encompasses submitting to or performing both oral sex and anal sex, he could not know the nature of the charges against him. He further notes that although T.C. unequivocally stated that she and Garner had engaged in oral sex, her testimony regarding anal sex was inconsistent.

In *Taylor v. State,* 614 N.E.2d 944, 948 (Ind.Ct.App.1993), *trans. denied,* the defendant argued that an information which charged him with performing or submitting to acts of molestation was too broad because it included a number of possible acts. We stated that where an information tracks the language of the statute, it will usually be specific enough unless the statute defines the crime only in general terms. *Id.* In that case, we noted that the language mirrored the statutory definition of the crime of child molestation and concluded that "[t]he information properly informed Taylor that the State needed only to prove that Taylor either performed or submitted to the conduct charged to prove a conviction of child molesting." *Id.*

■ Likewise, here, count II informed Garner that he could be convicted upon proof that he either performed or submitted to criminal deviate conduct. Under IC 35-41-1-9, proof of either oral or anal sex would make Garner guilty of this offense. Garner admits that he became aware through pretrial discovery of the evidence against him as to each incident. He was thus adequately informed to prepare a defense. We find no fundamental error in the charging information.

Garner also maintains that his trial counsel was ineffective in failing to move for dismissal of the information based on their lack of specificity. When reviewing a claim of ineffective assistance of counsel, we initially presume that counsel's representation was within the wide range of reasonable professional assistance. *Wine v. State*, 637 N.E.2d 1369, 1378 (Ind.Ct.App.1994), *trans. denied* (citing *Geans v. State*, 623 N.E.2d 435, 437 (Ind.Ct.App.1993)). The test to be applied when ineffective assistance of counsel is alleged is two-pronged. First, the defendant must prove that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, the defendant must prove that the substandard performance was so prejudicial that he was deprived of a fair trial. *Id.* In determining whether the defendant was prejudiced, we look to the totality of the evidence and ask whether there is a reasonable probability that the outcome would have been different, but for counsel's errors. *Wine*, 637 N.E.2d at 1378. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*

Here, we find that the information was sufficiently specific to withstand a motion to dismiss. Therefore, Garner was not prejudiced by his trial counsel's failure to bring such a motion because had she done so, it would not have been granted. Garner received effective assistance of counsel.

## II. Evidence of Other Misconduct

Garner next contends that the trial court erred in admitting into evidence other incidents of sexual conduct between him and T.C. as well as one incident involving both T.C. and S.C. He argues that this evidence was inadmissible under Indiana Rule of Evidence 404(b) because it was offered only to show his bad character and was unnecessary and irrelevant.

The evidentiary rulings of a trial court are afforded great deference and are reversed on appeal only upon a showing of an abuse of discretion. *Lee v. State*, 689 N.E.2d 435, 439 (Ind.1997); *Herrera v. State*, 710 N.E.2d 931, 935 (Ind.Ct.App. 1999). Evid. R. 404(b) provides:

"(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

Rule 404(b) was designed to assure that " 'the State, relying upon evidence of uncharged misconduct, may not punish a person for his character.' " *Lee*, 689 N.E.2d at 439 (quoting *Wickizer v. State*, 626 N.E.2d 795, 797 (Ind.1993)). The effect of this rule is that evidence is excluded only when it is introduced to prove the "forbidden inference" of demonstrating the defendant's propensity to commit the charged crime. *Herrera*, 710 N.E.2d at 935.

However, evidence of uncharged misconduct which is probative of the defendant's motive and which is "inextricably bound up" with the charged crime is properly admissible under Rule 404. *Id.* Further, the rule does not bar evidence of uncharged criminal acts that are "intrinsic" to the charged offense. *Lee*, 689 N.E.2d at 439. *See, e.g., United States v. Williams*, 900 F.2d 823, 825 (5th Cir.1990);

*cf. United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir.1995) ("When the other crimes or wrongs occurred at different times and under different circumstances from the offense charged, the deeds are termed 'extrinsic.'"). Rather, the paradigm of inadmissible evidence under Rule 404(b) is a crime committed on another day in another place, evidence whose only apparent purpose is to prove the defendant is a person who commits crimes. *Swanson v. State*, 666 N.E.2d 397, 398 (Ind. 1996).

■■■ The evidence about which Garner complains is not of this type. Garner was charged with molesting T.C. in the months of July to November 1999. Each of the acts to which T.C. testified is direct evidence that Garner committed the charged offenses. Thus, it was not evidence of an unrelated bad act occurring at another time offered only to create the inference that Garner is a man of bad character. Instead, this evidence was direct evidence that Garner molested T.C. during the charged time period. In terms of the language of Rule 404(b), it is not evidence of "other" wrongs, but of the charged offense. Further, T.C. and S.C.'s testimony that they together performed oral sex on Garner is also direct evidence that Garner molested T.C. by submitting to criminal deviate conduct with her. There was no error in the admission of this evidence.

### III. Use of Witnesses' Depositions

Garner also maintains that his right of confrontation under the United States and Indiana constitutions was violated when the trial court admitted deposition testimony of two witnesses who were unavailable to testify at trial because they were vacationing out of state at the time.

■■■ Those accused of crimes are guaranteed the rights of effective confrontation and cross-examination by the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution. *Holmes v. State*, 671 N.E.2d 841, 859 (Ind.1996), *cert. denied*, 522 U.S. 849, 118 S.Ct. 137, 139 L.Ed.2d 85 (1997). Exceptions by which hearsay evidence may be lawfully admitted into evidence must be separately tested to determine whether their application is violative of those rights. *Id.* The State must prove that a hearsay statement bears adequate indicia of reliability. *Id.* Reliability may be inferred if a statement falls within a firmly rooted hearsay exception or in the event the hearsay exception warrants admission, but if the exception fails to qualify as firmly rooted, the State must show particularized guarantees of trustworthiness which include only the circumstances surrounding the making of the statement and that render the declarant particularly worthy of belief. *Id.* The reliability requirement is usually met where the defendant had an opportunity to cross-examine the witness. *Freeman v. State*, 541 N.E.2d 533, 537 (Ind.1989).

■■■ Whether to allow the use of previously-recorded testimony in a particular case is left to the discretion of the trial court. *Id.* at 538; *Becker v. State*, 695 N.E.2d 968, 972 (Ind.Ct.App.1998). We will reverse only for an abuse of that discretion. *Becker*, 695 N.E.2d at 972.

■■■ The Indiana Rules of Evidence preclude the admission of hearsay except as provided by law or rule. Ind. Evidence Rule 802. However, depositions are not excluded by the hearsay rule if the declarant is unavailable as a witness and the party against whom the testimony is offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Evid. R. 804(b)(1). When the declarant is absent and the proponent of the statement is unable to procure the declarant's attendance by process or other reasonable means, the witness is deemed to be un-

available. Evid. R. 804(a)(5). A finding of unavailability can be implicit in the trial court's admission of the deposition, and the burden is on the appellant to prove the decision was clearly against logic and the natural inferences to be drawn from the record. *Freeman*, 541 N.E.2d at 538.

We analyzed an argument similar to Garner's in *Becker*, 695 N.E.2d at 972–73, in which the defendant asserted that the use of a deposition at trial violated his right of confrontation. In that case, the trial court admitted the deposition of a witness who had moved out-of-state and had no plans to return. Both the defendant and his counsel were present at the witness's deposition and had the opportunity to cross-examine him. *Id.* We therefore rejected the defendant's argument and held that the trial court's finding of unavailability was not clearly against the logic and the natural inferences to be drawn from the Record. *Id.*

Here, the two witnesses in question testified that they would be out-of-state on vacation at the time of Garner's trial. Garner and his counsel were present at the depositions and had the opportunity to cross-examine them. Further, Garner has not argued, nor does the Record disclose any evidence that their absence from the state was fabricated or procured by the State. Accordingly, because the witnesses were unavailable and because the depositions bear indicia of reliability in that Garner had the opportunity to cross-examine the witnesses, we find no abuse of discretion in the trial court's decision to admit them. *See also Freeman*, 541 N.E.2d at 537–38 (no abuse of discretion to admit videotaped deposition of private investigator who would be out-of-state at an arbitration hearing and was undergoing chemotherapy treatment for cancer, where defense counsel participated in deposition and had full opportunity to cross examine him).

### IV. Sentence

Finally, Garner argues that his sentence is erroneous. First, he alleges that the trial court misinterpreted IC 35–50–1–2(d)(1) as requiring consecutive sentences under the circumstances. However, the trial court specifically stated that even if it were discretionary to order the sentences to be served consecutively, he would do so considering Garner's "lengthy criminal history, his diagnosis, his likelihood of committing new criminal offenses, his illegal drug usage, [and] lack of remorse." *Record* at 800. Therefore, the trial court ultimately treated the issue as one within its discretion.

Garner further argues that the trial court erred in failing to find his remorse as a mitigating circumstance and instead finding lack of remorse as an aggravating factor. Trial courts are granted broad discretion in imposing sentences, and we will reverse a sentencing decision only for an abuse of that discretion. *Trice v. State*, 693 N.E.2d 649, 652 (Ind.Ct.App. 1998). A trial court's wide discretion extends to the determination of whether to increase presumptive penalties, impose consecutive sentences on multiple convictions, or both. *Madden v. State*, 697 N.E.2d 964, 967 (Ind.Ct.App.1998), *trans. denied.* When a sentence is enhanced or consecutive sentences are imposed, the trial court must set forth a statement of its reasons for selecting a particular punishment. *Id.* We will examine both the written sentencing order and the trial court's comments at the sentencing hearing to determine whether the trial court adequately explained the reasons for the sentence. *Newsome v. State*, 654 N.E.2d 11, 13 (Ind.Ct.App.1995), *trans. denied.*

The trial court is solely responsible for determining the appropriate weight to accord aggravating factors in

sentencing. *Shields v. State*, 523 N.E.2d 411, 414 (Ind.1988). Even where the trial court considers improper aggravators in imposing a sentence, the sentence will be affirmed if it is otherwise supported by a legitimate aggravator. *Spivey v. State*, 638 N.E.2d 1308, 1313 (Ind.Ct.App.1994). A single aggravator is sufficient to support the imposition of enhanced or consecutive sentences. *Id.*

■■■■■ The finding of mitigating circumstances is also within the discretion of the trial court. *Hackett v. State*, 716 N.E.2d 1273, 1277 (Ind.1999) (citing *Legue v. State*, 688 N.E.2d 408, 411 (Ind.1997)). An allegation that the trial court failed to identify or find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Id.* (citing *Carter v. State*, 711 N.E.2d 835, 838 (Ind.1999)). The trial court is not obligated to accept the defendant's contentions as to what constitutes a mitigating circumstance. *Id.*

■■■ Our review of the Record discloses that the evidence of Garner's remorse was at best conflicting. Although he expressed to a probation officer that he felt he was wrong and was "deeply sorry" and "never wanted to hurt anyone," *Supp. record* at 77, he later wrote Camp a letter in which he vowed to "be with" T.C. or her sister when either turns eighteen, explained how he would arrange to have Camp killed, and added "I will laugh as your blood flows from your body all over the pavement.... You are dead bitch count on that." *Record* at 777. Accordingly, we find that the mitigating factor of Garner's remorse is not clearly supported by the Record, and the trial court did not err in failing to find it as such.

■■ On the other hand, the trial court used Garner's lack of remorse as an aggravating circumstance. We find that the trial court was within its discretion in doing so. Moreover, we note that Garner fails to challenge the other aggravating factors cited by the trial court, including his lengthy criminal history, which included sixteen prior convictions. The court need list only one aggravating factor in order to support an enhanced sentence, and an enhanced sentence can be imposed where the only aggravating circumstance is a prior criminal history. *Cheshier v. State*, 690 N.E.2d 1226, 1229 (Ind.Ct.App. 1998). Further, one aggravating factor is sufficient to impose consecutive sentences. *Buzzard*, 712 N.E.2d at 554. The trial court did not err in weighing the aggravating and mitigating circumstances in this case.

■■ Finally, Garner also maintains that his sentence is manifestly unreasonable. A sentence authorized by statute will not be revised unless it is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 17(B).[2] The Indiana Constitution specifically charges this court with responsibility to review and revise sentences "to the extent provided by rule." IND. CONST. art. VII, § 6. This authority is independent from our general appellate jurisdiction. *Bluck v. State*, 716 N.E.2d 507, 516 (Ind.Ct.App.1999).

"The presumptive sentence assigned to a given class of felony is the penalty determined by the legislature to be appropriate for the standard crime committed by the standard criminal, in other words, where aggravators and mitigators rest at approximate equipoise." *Bustamante v. State*, 557 N.E.2d 1313, 1321 (Ind.1990). By con-

---

**2.** Because this appeal was initiated prior to January 1, 2001, the former Ind. Appellate Rules apply.

trast, "the maximum enhancement permitted by law ... should ... be reserved for the very worst offenses and offenders." *Buchanan v. State*, 699 N.E.2d 655, 657 (Ind.1998) (quoting *Bacher v. State*, 686 N.E.2d 791, 802 (Ind.1997)). We therefore examine the nature of Garner's offense and his character.

Garner was convicted of two class A felonies for molesting a twelve-year-old child, molestations which resulted in her pregnancy. Garner gained access to his victim when Camp allowed him to move into her home when he was experiencing financial difficulties and needed some place to stay. Garner rewarded this family's generosity by repeatedly engaging Camp's twelve-year-old daughter in various sex acts, engaging T.C. and thirteen-year-old S.C. in group sex, stealing from them, and refusing to leave, necessitating a restraining order. By Garner's description, he was a "father figure" to T.C., *record* at 16, and he took advantage of this position of trust to victimize her numerous times over a period of several months.

Garner confessed to his crimes, apparently finding nothing aberrant or unusual about engaging a child in a sexual "relationship." He explained, "To me as far as she goes she never had a problem with it. That's what she wanted. She asked me to do that for her and I did. Her mother is the one who has the conflict with it." *Record* at 15. He also explained why he fondled her: "I mean its [sic] only a natural thing." *Record* at 17. Garner also molested thirteen-year-old S.C. at the same time. Admittedly, Garner's offenses did not involve violence. They were, however, ongoing, repetitive, and accomplished through preying on the emotions of a child to exploit her and her sister. By his own admission, Garner had intercourse with T.C. at least six times.

The Record reveals nothing in Garner's character that would argue for leniency.

Two experts testified that Garner is a sexually violent predator. Dr. Denise Epperson, a psychiatrist, testified that Garner has a "very serious antisocial personality disorder." *Record* at 766. Dr. Leonard Miller, a psychologist, concurred in this opinion. Both experts and Garner's probation officer concluded that Garner had little insight into the consequences of his actions and no remorse. The evidence in the Record belies any hope that Garner will not reoffend, because he apparently does not regard his behavior as wrong. In fact, he vowed to "be with" the victims when he is released from prison. Inexplicably, he also still believes himself to have a romantic relationship with Camp, while he also taunts her with his sexual exploits with her young daughters. *See Record* at 777 ("[S.C.] is more a woman than you'll ever be ... I took something from you you can never replace[.] [S.C.] give [sic] herself to me ... your [sic] just jealous cause [sic] your daughters showed you they could take your man cause [sic] you can't keep one."). Following a life-long pattern of blaming others for his behavior, Garner abdicated responsibility for his actions here, instead explaining that the victims solicited sex from him, and he felt compelled to comply. He saw himself as a victim in this situation.

Finally, Garner's lengthy criminal history evidences his inability to conform his behavior to society's expectations. In thirteen years of adulthood, he has been arrested and convicted of multiple batteries, intimidation, alcohol related offenses, and check deception. Rather than learning from his mistakes and appreciating the leniency shown him in previous situations, he has had probation revoked three times. In fact, he was on probation at the time he committed this offense. Rather than taking responsibility for his actions, he believes he is "what the legal system has made me." *Supp. Record* at 65. He ex-

plained that he has trouble following rules and staying out of jail, but in jail he fits in and knows his place. Furthermore, the Record reveals that Garner has threatened the lives of several individuals, including Camp, his former mother-in-law, and his probation officer. We have searched the Record for evidence of Garner's character that would render his sentence manifestly unreasonable—youth, remorse, good work history, church attendance. We find nothing in the nature of this offense or the character of this offender which renders the 108–year sentence manifestly unreasonable. *See McCarthy v. State*, 749 N.E.2d 528 (Ind.2001) (enhanced, consecutive sentences not manifestly unreasonable for engaging students in sex acts); *Jackson v. State*, 735 N.E.2d 1146 (Ind.2000) (fifty year sentence, enhanced by thirty year habitual offender enhancement, not abuse of discretion for defendant convicted of molesting girlfriend's daughter over period of years); *Dinger v. State*, 540 N.E.2d 39 (Ind.1989) (defendant sentenced to eighty year' imprisonment for multiple counts arising from sexual attacks on twelve-year-old step-daughter); *Taylor v. State*, 735 N.E.2d 308 (Ind.Ct.App.2000), *trans. denied* (eighty-nine and one half years not unreasonable for seven counts of molesting family members); *Singer v. State*, 674 N.E.2d 11 (Ind.Ct.App.1996) (100 year sentence not manifestly unreasonable for molesting daughters over a period of several years); *Ridenour v. State*, 639 N.E.2d 288 (Ind.Ct.App.1994) (sentence of ninety-two years not manifestly unreasonable for five counts of molesting daughters and one count of battery).

Affirmed.

SHARPNACK, C.J., and MATTINGLY–MAY, J., concur.