## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 17 2015, 10:09 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Patricia Caress McMath
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Anthony D. Evinger,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 17, 2015

Court of Appeals Case No. 84A01-1408-CR-327

Appeal from the Vigo Superior Court.
The Honorable John T. Roach, Judge.
Cause No. 84D01-1208-FC-2875

**Baker, Judge.**

[1] Anthony Evinger appeals his conviction for Child Molesting,[1] a class C felony. He argues that it was fundamental error for the trial court to allow the State to condition the jury in its favor during voir dire. He also contends that the trial court committed fundamental error when it allowed T.B. to testify to multiple incidents of molestation. Finding no fundamental error, we affirm.

## Facts

[2] T.B. was eight years old during the summer of 2011. Her mother arranged for T.B.'s great aunt, Darla Evinger, to provide after-school care for T.B. Both T.B. and her younger brother would go to Darla's home when they finished school, and their mother would pick them up after work. Evinger is T.B.'s cousin, and he visited Darla's home occasionally. Sometimes his then-fiancée, Samantha, would accompany him.

[3] Sometime in 2011, T.B.'s mother began to notice a change in her behavior. T.B. no longer wanted to go to Darla's home and asked to stay with her grandmother or another relative. While T.B. had previously lingered to speak with Darla when her mother arrived after work, she now insisted that they leave Darla's home as soon as her mother came to collect her.

[4] T.B. attended a YMCA camp sometime in 2012. While she was there, Terre Haute Police Department Lieutenant James Brentlinger visited the camp to give

---

[1] Ind. Code § 35-42-4-3(b).

a presentation to the children on "good touch, bad touch." Tr. p. 342. After the presentation, a camp counselor told Lieutenant Brentlinger that T.B. had reported that she had been touched inappropriately. Lieutenant Brentlinger met with T.B. and arranged for her to speak with the Child Advocacy Center. T.B. revealed that she had been molested by her cousin, Evinger, while she was at Darla's home. At this point, the investigation was transferred to the Vigo County Sheriff's Department. A deputy took Evinger's statement, wherein Evinger denied molesting T.B.

[5] On September 4, 2012, the State charged Evinger with child molesting. His two-day jury trial began on June 9, 2014. At trial, T.B. testified regarding multiple instances of molestation. T.B. testified that in 2011, Evinger molested her at Darla's home. Evinger would have T.B. sit on his lap on a couch in the living room. He would then slide his hands beneath her pants and touch her vagina. This occurred on seven or eight different occasions. T.B. testified that other children were in the room while this occurred and that, on one occasion, Evinger's fiancée was also in the room. On at least one occasion, Evinger used a blanket to cover himself and T.B. while he touched her.

[6] T.B. testified that the last time Evinger touched her, she refused to get on his lap, but Evinger forced her to do so. T.B. stated that she continued to get on Evinger's lap because she trusted him, and she did not believe that he would continue to touch her. Evinger did not object to T.B.'s testimony.

[7] The jury found Evinger guilty as charged. On July 10, 2014, the trial court sentenced Evinger to six years, with three years suspended to probation. Evinger now appeals.

# Discussion and Decision

[8] Evinger argues that it was fundamental error for the trial court to allow the State to condition the jury during voir dire. He contends that the prosecutor introduced substantive facts about the case and conditioned the jury when he asked prospective jurors whether they would discount the testimony of a young child because of a delay in reporting. The trial court has broad discretionary power in regulating the form and substance of voir dire examination. *Hopkins v. State*, 429 N.E.2d 631, 634 (Ind. 1981). In general, the decision of the trial court will be reversed only if there is a showing of a manifest abuse of discretion and a denial of a fair trial. *Logan v. State*, 729 N.E.2d 125, 133 (Ind. 2000). "This will usually require a showing by the defendant that he was in some way prejudiced by the voir dire." *Id.*

[9] Voir dire examination is not to be used to educate jurors, but to ascertain whether jurors can render a fair and impartial verdict in accordance with the law and the evidence. *Coy v. State*, 720 N.E.2d 370, 372 (Ind. 1999). Our Supreme Court has stated that it is improper to use voir dire "to implant in jurors' minds ideas about the substantive facts of the case being tried." *Id.* However, it is acceptable to use voir dire "to inquire into jurors' biases or

tendencies to believe or disbelieve certain things about the nature of the crime itself or about the particular line of defense." *Id.*

[10] Here, Evinger failed to object to the prosecutor's voir dire examination. Therefore, he must make a showing of fundamental error. Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights that a fair trial is rendered impossible. *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014). In order to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not sua sponte raising the issue because the alleged errors "(a) constitute clearly blatant violations of basic and elementary principles of due process and (b) present an undeniable and substantial potential for harm." *Id.* (internal quotations omitted).

[11] During voir dire examination, the prosecutor asked prospective jurors if they would "automatically discount the testimony of a young girl just because she may have waited to, to tell someone the situation" and inquired as to whether they would have any concerns about the delay. Tr. p. 131-33. He also told the jurors that "when you're talking about a child and an older individual, it's not uncommon for someone to delay in reporting." Tr. p. 130. The prosecutor continued on, asking jurors to provide reasons as to why a child might not immediately report a molestation. Some of the answers provided included "embarrassment," "because they're scared," and "they think they may not be believed." *Id.* at 131.

[12]     As noted above, the State was entitled to use voir dire "to inquire into jurors' biases or tendencies to believe or disbelieve certain things about the nature of the crime itself or about the particular line of defense." *Hopkins*, 429 N.E.2d at 635. The State was free to question the prospective jurors concerning their biases, just as Evinger was free to question the prospective jurors regarding possible prejudices in favor of children who may have been molested. Tr. p. 59-60. Therefore, the State could properly ask prospective jurors whether they would discount the testimony of a young child because of a delay in reporting. However, the prosecutor's statements informing the jury about the tendencies of children to delay are concerning, as they are uncomfortably close to the line between inquiring and informing. While we would caution counsel to be mindful of this distinction, we do not find that it rose to the level of fundamental error such that a fair trial was rendered impossible.

[13]     Evinger also argues that fundamental error occurred when the trial court allowed T.B. to testify to multiple incidents of molestation. He maintains that this evidence was introduced in violation of Indiana Rule of Evidence 404(b). The admission of evidence at trial is a matter left to the discretion of the trial court. *Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013). We review these determinations for abuse of that discretion, and will reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.* at 260.

[14]     Evinger did not object to T.B.'s testimony at the time of trial, but he contends that the trial court's decision to allow T.B. to testify regarding multiple

incidents of molestation amounts to fundamental error. As noted above, fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights that a fair trial is rendered impossible. *Ryan*, 9 N.E.3d at 668.

[15] Evinger contends that, as he was only charged with one count of child molesting, it was fundamental error for the trial court to allow T.B. to testify to multiple instances of molestation in violation of Rule 404(b). Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Evinger alleges that the State introduced evidence of prior bad acts to show that he has a propensity to molest and that he acted in accordance with that propensity to commit the charged crime.

[16] To bolster his argument, Evinger attempts to distinguish his case from a line of cases including *Garner v. State*, 754 N.E.2d 984, 993 (Ind. Ct. App. 2001), and *Marshall v. State*, 893 N.E.2d 1170, 1175 (Ind. Ct. App. 2008). In both cases, a panel of this Court determined that the trial court did not err in admitting evidence of repeated incidents of molestation, as those incidences fell within the charged time period and therefore constituted direct evidence of the crime charged. *Id.* Evinger argues that his case is distinguishable because both Marshall and Garner were charged with multiple counts of child molesting, while he was charged only with one. Evinger seems to be arguing that evidence

of multiple incidents of molestation may only be admitted into evidence against a defendant charged with multiple counts of child molesting.

[17] Evinger has misinterpreted both *Garner* and *Marshall*, and the instant case is not distinguishable. In both of the above cases, testimony regarding repeated molestations that outnumbered the charged counts of child molesting was allowed into evidence. *Garner*, 754 N.E.2d at 992; *Marshall*, 893 N.E.2d at 1175-76. In both cases, this Court determined that the evidence was not admitted to show that the defendant acted in accordance with character to commit the crime, but rather, to show that the defendant committed the crime(s) charged. *See. id.* at 1175. ("[T]he evidence in the present case was not presented to establish an exception to 404(b), such as motive or intent or plan; rather, it was presented as direct evidence of the charged molestations.").

[18] Therefore, the admissibility of such evidence does not turn on the number of charged counts of child molesting, as Evinger would have it. Rather, admissibility is dependent upon the purpose for which the evidence is being offered. Here, the State presented evidence that Evinger touched T.B. on multiple occasions within the charging dates, not to prove that he had the propensity to molest T.B., but to show that he committed the crime charged.[2] Therefore, the trial court did not err in admitting T.B.'s testimony.

---

[2] Furthermore, Evinger has shown that T.B.'s testimony does not amount to fundamental error by using it to bolster his defense. During closing argument, defense counsel argued that T.B.'s testimony that Evinger molested her numerous times made T.B.'s entire testimony implausible:

The judgment of the trial court is affirmed.

Vaidik, C.J., and Riley, J., concur.

---

> Next [T.B.] testified that Anthony was sitting on the couch, and she would go sit on the couch with him, and she did this not once, not twice, not three (3) times, not four (4) times, not five (5) times, not six (6) times, but seven (7) or eight (8) times. . . . A ten (10) year old knows enough that if you touch a stove and it's hot and it burns, you don't go back and touch it again. And if there's someone who's sitting on the couch who you claim is molesting you, you don't go back and sit on that couch with him. It does not make sense.

Tr. p. 452-53. In *Brewington v. State*, 7 N.E.3d 946, 974 (Ind. 2014), our Supreme Court stated that, "if the judge could recognize a viable reason why an effective attorney might not object, the error is not blatant enough to constitute fundamental error." Here, it is clear that Evinger used T.B.'s testimony of multiple incidents of molestation to claim that she was not a credible witness as a part of his defense strategy. Therefore, there is a clearly a strategic, viable reason why defense counsel might not have objected, and any error would not have risen to the level of fundamental error.