

FILED

Mar 25 2020, 5:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Russell B. Cate
Cate, Terry & Gookins, LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Richard A. Mise,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 25, 2020

Court of Appeals Case No.
19A-CR-1049

Appeal from the Hamilton
Superior Court

The Honorable Michael A. Casati,
Judge

Trial Court Cause No.
29D01-1702-FA-747

**Pyle, Judge.**

## Statement of the Case

Richard A. Mise ("Mise") appeals, following a jury trial, his convictions and aggregate sentence for Class A felony child molesting[1] and Class C felony child molesting.[2] Mise argues that: (1) the trial court committed fundamental error when it admitted into evidence testimony from the two victims relating to more than one instance of inappropriate touching; and (2) his aggregate advisory sentence with time suspended to probation is inappropriate. Concluding that Mise has failed to show fundamental error and that his sentence is not inappropriate, we affirm Mise's convictions and sentence.

We affirm.

## Issues

1. Whether the trial court committed fundamental error when it admitted into evidence testimony from the two victims.

2. Whether Mise's sentence is inappropriate.

## Facts

Mise has five children with two different women, neither of whom he married. These two women each had a daughter with men other than Mise. These

---

[1] IND. CODE § 35-42-4-3(a). We note that, effective July 1, 2014, a new version of this child molesting statute was enacted and that Class A felony child molesting is now a Level 1 felony. Because Mise committed his crime prior to the effective date, we will apply the statute in effect at that time.

[2] I.C. § 35-42-4-3(b). Under the above-noted amended statute, Class C felony child molesting is now a Level 4 felony.

daughters, S.M., born in September 2001, and E.R., born in June 2002, are the victims in this case.

[4] S.M.'s mother met Mise in 2002 when S.M. was five or six months old. S.M. had a father-daughter relationship with Mise. S.M.'s mother had an eleven-year relationship and four sons with Mise. In 2013, after that relationship had ended, Mise moved into his parents' house in Noblesville. Thereafter, S.M. and her four brothers stayed with Mise at his parents' house every other weekend.

[5] E.R. first met Mise around 2013 when she was eleven or twelve years old. E.R.'s mother had a daughter, G.R., with Mise. From the time that E.R. met Mise, she and G.R. spent "[a]lmost every weekend" visiting Mise at his parents' house. (Tr. Vol. 3 at 23). During some of those weekends, S.M. and her four brothers also visited Mise.

[6] During one weekend, Mise's dog had fleas, and E.R., who was eleven or twelve years old, gave the dog a bath in the bathroom. After she had finished bathing the dog, Mise went into the bathroom and told E.R. that "he wanted [her] to check [her] vagina [to see] if [she] had fleas." (Tr. Vol. 3 at 28). Mise watched as he had E.R. take off her clothes, squat on the floor, stick her finger in her vagina, pull it out, and check it for fleas.

[7] On a day shortly thereafter, E.R. gave Mise's dog another bath. After the bath, Mise had E.R. check herself for fleas while in his bedroom. Mise told E.R. to "take off [her] pants[,] . . . squat or lay down[,] . . . stick [her] finger in [her]

vagina[,] . . . pull it back out[,] and see if [she] had fleas." (Tr. Vol. 3 at 30). Again, Mise watched E.R. as she did the flea check. E.R. was "really scared" at that time but did not say anything to Mise because she felt that he was "the powerful human[.]" (Tr. Vol. 3 at 33). E.R. did not tell anyone what had happened because she was "afraid that [she] would have been in trouble." (Tr. Vol. 3 at 32).

[8] Later, sometime between late 2013 and early 2014, E.R., S.M., and their mothers and siblings visited Mise on the same day. E.R. was sitting in the living room on the couch with Mise as she played with her Kindle and he watched television. Mise sat against the couch's armrest with his legs spread out, and E.R. sat in between his legs and leaned against him. Mise's father was also in the living room, sitting at the computer with his back to Mise. Mise reached under the blanket that covered E.R., slid his hand inside her jeans, inserted his finger in her vagina, and rubbed his finger up and down. As he did so, Mise whispered in E.R.'s ear, asking her, "Does that feel good?" (Tr. Vol. 3 at 26). When Mise's mother approached and walked into the room, Mise pulled his hand out E.R.'s pants. E.R. left the couch and "went straight back" to where S.M. was in the house, and E.R. told S.M. what Mise had done. (Tr. Vol. 3 at 27). After that incident, E.R. never went back to Mise's house.

[9] Thereafter, Mise inappropriately touched S.M. when she was visiting at Mise's house. On one occasion when S.M. was twelve years old, she was in Mise's bedroom talking to him when he "told [her] to get completely undressed." (Tr. Vol. 2 at 247). S.M. "d[id] what [she] was told" and removed her tank top and

shorts. (Tr. Vol. 2 at 247). He then instructed S.M. to lie on the bed. Mise, who was wearing basketball shorts and no shirt, then started "fingering" S.M. (Tr. Vol. 2 at 248). He put his hand on top of and inside her vagina. S.M. told Mise to stop, but he did not. He eventually stopped when S.M. got up, got dressed, and ran out of the bedroom. S.M. did not tell anyone what Mise had done because she "didn't feel comfortable saying it." (Tr. Vol. 2 at 250).

[10] A couple of weeks later, Mise again inappropriately touched S.M. At that time, she had a skin rash on her arms, legs, chest, and stomach, and she had a medicated lotion that she had to put on it. S.M. was able to apply the lotion by herself, but Mise went into the bathroom with her to apply lotion on her. Mise told S.M. to get undressed and to sit on the toilet, and he rubbed lotion on S.M.'s arms, legs, and chest, including her "boobs." (Tr. Vol. 3 at 4). Mise then touched S.M. "[i]n the private area" and began "fingering [her] again." (Tr. Vol. 3 at 4, 5). After a few minutes, S.M. "pushed him" off, got dressed, and ran out of the bathroom. (Tr. Vol. 3 at 5).

[11] Approximately three years later, S.M. told her school counselor what Mise had done to her. S.M. also told her school counselor that she was concerned about E.R. The school counselor then reported the allegations to DCS and the police. Thereafter, in March 2016, forensic interviewers at Cherish Child Advocacy Center ("Cherish Center") interviewed S.M. and E.R. Apparently, during E.R.'s forensic interview, she stated that Mise had touched her vagina when he checked her for fleas. The full content of the girls' forensic interviews, however, is not known because the State did not offer them as evidence during trial.

[12] Hamilton County Sheriff's Department Detective Sergeant Scott Goff ("Detective Goff") interviewed Mise on March 30, 2016 and April 12, 2016. During the first interview, Mise acknowledged that he had had a father-daughter relationship with S.M. since she was a baby. Detective Goff asked Mise whether he had rubbed S.M.'s vagina while on his bed, and Mise denied it. The detective also asked Mise about S.M.'s rash, and Mise stated that he had rubbed the rash cream on S.M.'s back only and that he had instructed her to put the cream on any other part of her body. Mise also stated that he had no memory of doing anything wrong.

[13] Additionally, Detective Goff asked Mise about allegations involving E.R. The detective asked Mise if he had talked to E.R. about masturbation because E.R. had said that Mise had talked to her about "sticking a finger in the hole" and it "feeling good." (State's Ex. 6R). Mise denied doing so. Detective Goff also asked Mise about how he had checked E.R. for fleas in the bathroom after she had washed the dog, and he denied that he had E.R. open her vagina and then checked it for fleas. Mise stated that he had told E.R. that fleas could go anywhere and that he had instructed her to spray herself off after giving the dog a bath. Mise also denied that he had put his hand down E.R.'s pants and had rubbed her vagina while sitting on the couch, and he stated that his dad was always in the living room with him.

[14] During the second interview, when Detective Goff and Mise discussed whether Mise had rubbed the rash cream on S.M.'s vagina, Mise stated that he had never directly done anything of which he was consciously aware. When the

detective asked Mise whether he had indirectly touched her, Mise pondered that he may have explained to her in too much detail about how to rub in the cream and where to rub it. Mise stated that he had told S.M. to put the cream everywhere and that he had demonstrated to her, by rubbing his own nipples, how to rub it on her chest. Mise again denied that he had put his finger in E.R.'s vagina while they were on the couch, but he mused that, when she leaned up against him on the couch, he may have put his arms around her and put his hand on her belly. Detective Goff and Mise again discussed what had happened with the flea check after E.R. had washed the dog. Mise denied that he had touched E.R.'s vagina or breasts but stated that E.R. had raised her shirt for him to look at her back for fleas.

[15] The State later charged Mise with Class A felony child molesting and Class C felony child molesting. In regard to the Class A felony, the State generally alleged that between June 24, 2013 and June 23, 2015, Mise performed deviate sexual conduct with E.R. For the Class C felony, the State generally alleged that between September 14, 2013 and February 28, 2015, Mise fondled or touched S.M. with intent to arouse or satisfy the sexual desire of himself or S.M.

[16] After he was charged, Mise filed a motion for discovery in which he sought, among other things, any exhibits and any 404(b) evidence that the State might offer at trial. In April 2017, the State filed a discovery response, indicating the various exhibits, which included a copy of S.M.'s and E.R.'s forensic interviews, that it had provided to Mise's counsel.

[17] The trial court held a three-day jury trial in March 2019. At that time, S.M. was seventeen years old, and E.R. was sixteen years old. During opening statements, the prosecutor told the jurors that they would hear testimony from S.M. about two instances where Mise had touched her vagina, once in his bedroom and the second time when he put a prescription cream on her rash. The prosecutor also told the jury that they would hear testimony from E.R. about how Mise had put his finger into her vagina when they were sitting on a couch and about how Mise had inspected E.R.'s vagina for fleas after she had washed the dog. Mise did not object to the prosecutor's statements.

[18] During the trial, S.M. and E.R. testified to the facts regarding the offenses as set forth above, and Mise did not object to the admission of this testimony. S.M. and E.R. also testified that they had been interviewed at the Cherish Center. The videos of their interviews were not offered as evidence. When discussing her Cherish Center interview, S.M. testified that she had told the Cherish Center interviewer what had happened but acknowledged that it was "not in full detail" because she had not felt comfortable when discussing what Mise had done to her. (Tr. Vol. 3 at 7).

[19] Mise's counsel specifically cross-examined S.M. and E.R. regarding their testimony that Mise had inappropriately touched them on various occasions. His counsel also used S.M.'s and E.R.'s statements made during their Cherish Center interviews to challenge the credibility of their trial testimony. For example, counsel asked S.M. if she remembered whether she had told the Cherish Center interviewer that Mise had touched her only on the outside of

her body and that she had stopped Mise from touching her breasts. Mise's counsel also asked E.R. whether she remembered telling the Cherish Center interviewer that Mise had touched her when she checked for fleas in the bathroom and whether she had told the interviewer about the flea check incident in the bedroom.

[20] During closing arguments, the State discussed the elements of the two charged offenses. When discussing Mise's Class A felony charge involving E.R., the State argued that Mise had performed deviate sexual conduct with E.R. when he put his finger insider her vagina while they were on the couch. The State also argued that Mise had groomed E.R. for the inappropriate touching when he had instructed her to touch her vagina to check for fleas. During Mise's closing argument, his attorney also referred to flea-checking testimony in an attempt to challenge E.R.'s credibility. In regard to Mise's Class C felony charge involving S.M., the State argued that Mise had fondled or touched S.M.'s vagina on two occasions, once in his bedroom and again when he had put rash cream on her. The jury found Mise guilty as charged.

[21] During Mise's sentencing hearing, E.R. gave a victim-impact statement, testifying that Mise had originally "acted like a dad" whom she had trusted but then he had "turned into this monster" that "absolutely terrified" her after he had "laid [his] hands on [her.]" (Tr. Vol. 3 at 121). S.M. provided a written victim-impact statement and explained that Mise's crime against her had affected her emotionally and had caused her to feel depressed, scared, and suicidal. The trial court found multiple aggravating circumstances, including:

(1) Mise's violation of his position of trust with S.M. and E.R.; (2) the nature and circumstances of the offenses showing that Mise had committed the offenses while his other minor children were in the house; (3) the fact that he had multiple victims; (4) Mise had engaged in multiple acts of molestation against these victims; and (5) a lesser sentence would depreciate the seriousness of his offenses. The trial court found Mise's lack of criminal history and the hardship on his dependent to be mitigating circumstances. The trial court imposed an advisory thirty (30) year sentence, with twenty-five (25) years executed and five (5) years suspended to probation for Mise's Class A felony conviction and an advisory four (4) year sentence for his Class C felony conviction. The trial court ordered these sentences to be served consecutively. Mise now appeals.

# Decision

[22] Mise argues that: (1) the trial court committed fundamental error when it admitted into evidence testimony from the two victims; and (2) his aggregate sentence is inappropriate.

## 1. Admission of Evidence

[23] We first review Mise's challenge to the trial court's admission of testimony from the two victims, E.R. and S.M. Specifically, he contends that their testimony was inadmissible under Indiana Evidence Rule 404(b) because it involved prior bad acts that were "undisclosed" and "uncharged." (Mise's Br. 10, 13). Mise acknowledges that he did not object to the testimony at trial. His

failure to object to the testimony results in waiver of any argument regarding its admissibility. *See Hoglund v. State*, 962 N.E.2d 1230, 1239 (Ind. 2012) ("Failure to object at trial waives the issue for review unless fundamental error occurred."), *reh'g denied*. Mise recognizes this procedural default and argues that the admission of the testimony constituted fundamental error.

[24] "The fundamental error exception is extremely narrow[] and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006) (internal quotation marks omitted). "Harm is not shown by the fact that the defendant was ultimately convicted; rather harm is found when error is so prejudicial as to make a fair trial impossible." *Hoglund*, 962 N.E.2d at 1239. The fundamental error exception is "available only in 'egregious circumstances.'" *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (quoting *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003)), *reh'g denied*. "Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error." *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014), *reh'g denied*.

[25] Indiana Evidence Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Ind.

Evid. Rule 404(b)(1). However, such evidence may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid. R. 404(b)(2). Evidence "Rule 404(b) is designed to prevent the jury from making the forbidden inference that prior wrongful conduct suggests present guilt." *Halliburton v. State*, 1 N.E.3d 670, 681 (Ind. 2013) (citation and internal quotation marks omitted). *See also Hicks v. State*, 690 N.E.2d 215, 218 (Ind. 1997) (explaining that Evidence Rule 404(b) is "designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities"). When assessing the admissibility of evidence under Evidence Rule 404(b), the trial court must: (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Evidence Rule 403. *Rivera v. State*, 132 N.E.3d 5, 12 (Ind. Ct. App. 2019), *reh'g denied*, *trans. denied*.

[26] Turning to Mise's challenge to the admission of E.R.'s and S.M.'s testimony, we conclude that he has failed to meet his burden of showing fundamental error. Mise has failed to show how the admission of their testimony made a fair trial impossible and why the circumstances in this case were egregious. Indeed, Mise has failed to direct us to the specific portion of testimony from E.R. and S.M. that he contends should have been excluded from evidence. Instead, he references the girls' testimony regarding the multiple acts that he committed against them, which were the acts that were investigated by

Detective Goff and apparently discussed by the girls during the forensic interviews. Mise seems to argue that, because he was charged with only one count of child molesting for each girl, it was fundamental error for the trial court to allow S.M. and E.R. to testify to multiple instances.

[27] Evidence Rule 404(b) does not, however, bar evidence of repeated incidents of sex offenses that occurred within the charged timeframe where such evidence is "direct evidence" of guilt of the charged offenses and not evidence of other crimes or wrongs. *See e.g.*, *Marshall v. State*, 893 N.E.2d 1170, 1174 (Ind. Ct. App. 2008); *Garner v. State*, 754 N.E.2d 984, 993 (Ind. Ct. App. 2001), *opinion summarily aff'd in relevant part, vacated in part,* 777 N.E.2d 721 (Ind. 2002); *see also Baker v. State*, 948 N.E.2d 1169, 1174-78 (Ind. 2011) (holding that the State may present evidence of a greater number of separate child molesting offenses than the number charged so long as jury is properly instructed on unanimity),[3] *reh'g denied*. In *Garner* and *Marshall*, testimony regarding repeated molestations, which were more than the charged counts of child molesting, was admitted into evidence. On appeal, the defendants in both cases argued that the admission of the multiple acts violated Evidence Rule 404(b). Our Court explained that there was no error in the admission of the multiple acts of molestation and no violation of Rule 404(b) in either case because the testimony in each case was "direct evidence" that the defendants had committed the charged offenses

---

[3] Mise does not argue that the jury was improperly instructed regarding unanimity.

during the charged time period, not evidence of other wrongs to show that the defendants had acted in accordance with the character to commit the offenses. *See Marshall*, 893 N.E.2d at 1174; *Garner*, 754 N.E.2d at 993.

[28] Like those cases, here, the State presented testimony from S.M. that Mise had touched her vagina on two occasions within the charging dates, once in his bedroom and a second time when he put rash lotion on her. This evidence was direct evidence that Mise had committed the charged offense of child molesting during the time period listed in the charging information. As such, the admission of her testimony was not in violation of Rule 404(b). *See Marshall*, 893 N.E.2d at 1174; *Garner*, 754 N.E.2d at 993. Furthermore, Mise did not object to S.M.'s testimony regarding the multiple instances of molestation, and he used this testimony when cross-examining her in an effort to challenge her credibility. Accordingly, Mise has failed to show that the trial court committed fundamental error by allowing S.M.'s testimony.

[29] As for Mise's challenge to E.R.'s testimony, it appears that he is challenging the admission of her testimony regarding the flea checks during which Mise instructed E.R. to insert her own finger in her vagina to check for fleas. Because Mise was charged with child molesting for performing sexual deviate conduct with E.R. (or that he performed the penetration of her sex organ by an object), this evidence would not constitute direct evidence of his charged offense. Nevertheless, her testimony was admissible under Rule 404(b)(2), which permits evidence to be admitted when it is admitted "for another purpose," such as "preparation" or "plan[.]" Evid. R. 404(b)(2). We have

previously explained that evidence of a defendant's preparation and planning, which includes "grooming"—or "the process of cultivating trust with a victim and gradually introducing sexual behaviors until reaching the point where it is possible to perpetrate a sex crime against the victim" is relevant and establishes a valid basis for the admission of evidence under Rule 404(b). *See Piercefield v. State*, 877 N.E.2d 1213, 1216 n.1 (Ind. Ct. App. 2007) (internal quotation marks and citation omitted), *trans. denied*; *see also Guffey v. State*, 42 N.E.3d 152, 161 (Ind. Ct. App. 2015), *trans. denied*.

[30]   Here, the testimony regarding the flea checks was relevant to a matter other than his propensity to commit the charged offense. Instead, it was relevant to show Mise's grooming of S.M. to get her comfortable with having her vagina touched. *See Guffey*, 42 N.E.3d at 161 (explaining that evidence was admissible under Rule 404(b)(2) where the defendant's acts of encouraging the victim's exposure to alcohol and sexually-tinged content and acts were done to prepare the victim to be more comfortable with the eventual sexual act that the defendant had planned); *Piercefield*, 877 N.E.2d at 1216-17 (holding that evidence was admissible under Rule 404(b)(2) because the defendant's prior acts of having his stepchildren massage him were relevant under Rule 404(b) to show the defendant's preparation, plan, and grooming because he was familiarizing the children to touching his body). As the State pointed out during its closing argument, Mise had prepared E.R. for the inappropriate touching when he had instructed her to touch her vagina to check for fleas. E.R.'s testimony was probative and admissible to show his preparation and

planning and any prejudice did not outweigh the probative value. Because this evidence was admissible, Mise has failed to show that the trial court committed fundamental error by admitting the testimony into evidence.[4]

## 2. Inappropriate Sentence

[31] Mise argues that the aggregate sentence for his Class A felony child molesting and Class C felony child molesting is inappropriate. We disagree.

[32] We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "Appellate Rule 7(B)

---

[4] In his Reply Brief, Mise challenges the admission of E.R.'s testimony under Rule 404(b)(2), arguing for the first time that the State had failed to give him reasonable notice—before or during trial—of the general nature of the evidence that it intended to offer. Mise has waived this argument. *See Snow v. State*, 137 N.E.3d 965, 969 (Ind. Ct. App. 2019) ("The law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived."), *reh'g denied*; *see also Jones v. State*, 22 N.E.3d 877, 881 n.4 (Ind. Ct. App. 2014). Waiver notwithstanding, the record before us makes clear that Mise had notice of the flea-check incidents prior to E.R.'s testimony as the incidents were discussed during Mise's police interview, were apparently contained on the video of E.R.'s forensic interview that the State provided to him pursuant to a discovery request, and were discussed during opening statements at trial.

Additionally, we reject Mise's reliance on *Sasser v. State*, 945 N.E.2d 201 (Ind. Ct. App. 2011), *trans. denied*. In *Sasser*, the defendant was charged with failing to register as a sex offender, and the State introduced evidence of the defendant's prior convictions for failure to register. In Sasser's appeal, there was no argument that the evidence was admissible pursuant to one of the exceptions in Rule 404(b)(2). Here, however, an exception is applicable to Mise's challenged testimony.

analysis is not to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012) (internal quotation marks and citation omitted), *reh'g denied*.

[33] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Here, Mise was convicted of Class A felony child molesting and Class C felony child molesting. A person who commits a Class A felony "shall be imprisoned for a fixed term of between twenty (20) and fifty (50) years, with the advisory sentence being thirty (30) years." I.C. § 35-50-2-4(a). A person who commits a Class C felony "shall be imprisoned for a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years." I.C. § 35-50-2-6(a). Here, the trial court imposed consecutive advisory sentences and suspended a portion of the sentence to probation. Specifically, the trial court imposed an advisory thirty (30) year sentence, with twenty-five (25) years executed and five (5) years suspended to probation for Mise's Class A felony conviction and an advisory four (4) year sentence for his Class C felony conviction.

[34] An appellate court is "unlikely to consider an advisory sentence inappropriate." *Shelby v. State*, 986 N.E.2d 345, 371 (Ind. Ct. App. 2013), *trans. denied.* "[A] defendant bears a particularly heavy burden in persuading us that his sentence is inappropriate when the trial court imposes the advisory sentence." *Fernbach*

*v. State*, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011), *trans. denied*. When considering the appropriateness of a sentence, we consider "all aspects of the penal consequences imposed by the trial judge in sentencing," including "whether a portion of the sentence is ordered suspended." *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). Mise has not met the heavy burden he faces in this appeal.

[35] Turning first to the nature of Mise's two felony child molesting offenses, we note that Mise committed his offenses against two young girls with whom he shared a father-daughter relationship. He abused his position of trust with these girls and robbed them of their youthful innocence when he molested them. As noted during the sentencing hearing, the nature of Mise's offenses against the girls had a detrimental effect on them.

[36] Turning to Mise's character, we recognize that he has no prior criminal history and that his incarceration may pose a hardship to his dependents. Indeed, the trial court considered those factors as mitigating circumstances when imposing the advisory sentences with suspended time in this case. We note, however, that Mise's commission of the offenses while other people, including his own minor children, were in the house reflects poorly on his character.

[37] Mise has not persuaded us that his aggregate thirty-four-year sentence with five years suspended for his Class A felony and Class C felony child molesting

convictions is inappropriate. Therefore, we affirm the sentence imposed by the trial court.[5]

[38] Affirmed.

Robb, J., and Mathias, J., concur.

---

[5] We also reject Mise's suggestion that the trial court improperly considered his score on the Indiana Risk Assessment System instrument. "Our Indiana Supreme Court has explained that scores on a probation department's risk assessment instrument 'are not intended to serve as aggravating or mitigating circumstances nor to determine the gross length of sentence[.]'" *Bratcher v. State*, 999 N.E.2d 864, 872 (Ind. Ct. App. 2013) (quoting *Malenchik v. State,* 928 N.E.2d 564, 575 (Ind. 2010)), *trans. denied*. "Instead, these 'offender assessment instruments are appropriate supplemental tools for judicial consideration at sentencing' and can be used by the trial court 'in formulating the manner in which a sentence is to be served.'" *Id. (*quoting *Malenchik,* 928 N.E.2d at 575). Here, during the sentencing hearing, Mise was the one who highlighted his risk assessment score by presenting testimony from the probation officer. The trial court, however, did not use his assessment score as an aggravating circumstance.